**Opinion issued April 30, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00288-CR

## NO. 01-11-00289-CR

———————————

**MARCUS DESHUNN FREEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1238767 and 1238768[1]**

---

---

[1]     Appellate case number 01-11-00288-CR pertains to trial court case number 1238767 (possession with intent to deliver cocaine) and 01-11-00289-CR pertains to trial court case number 1238768 (possession with intent to deliver "cough syrup" codeine).

## MEMORANDUM OPINION

A jury convicted Marcus Deshunn Freeman of possession with intent to deliver more than 4, but less than 200 grams of cocaine,[2] and possession with intent to deliver more than 400 grams of codeine cough syrup.[3] The jury also found that Freeman had used or exhibited a deadly weapon during the commission of both offenses. Freeman was sentenced to a concurrent term of twenty-five years' imprisonment for each offense. In four issues, Freeman contends that (1) the evidence supporting his convictions is legally insufficient, (2) the evidence supporting the deadly weapon findings is legally insufficient, (3) he was egregiously harmed by the State's improper jury argument, and (4) the trial court erred in refusing his request for an instruction to disregard another of the State's improper jury arguments. We affirm the judgment of the trial court.

### Background

The Houston Police Department received information that narcotics were being trafficked from a single-family residence located at 5315 Keystone Street. After conducting some surveillance of the property, Officer S. Bryant, the lead investigator, sent a confidential informant and another officer, K. Jacobs, to the home to execute a controlled buy. Officer Jacobs, who was posing as the

---

[2]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .112(a), (d) (West 2010).

[3]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.105(1), .114(a), (e) (West 2010).

informant's girlfriend, witnessed Freeman sell crack cocaine to the informant from the front doorway of the home. Based on information obtained as a result of the controlled buy, Officer Bryant obtained a "no knock" search and arrest warrant for 5315 Keystone Street.

Officer Bryant and the other members of his team executed the warrant five days after the controlled buy took place. When they arrived at the property, the officers found two men standing in front of the main house and another man inside the main house. During the search, a marked patrol unit that was watching the perimeter of the property alerted them that two more men—one of whom was later identified as Freeman—were exiting a second, smaller, unattached building located at the rear of the property. The officers went to the backyard where they encountered two pit bulls. One of the officers discharged his weapon to protect the officers from the aggressive animals. They then detained Freeman and his companion. Freeman was later arrested and found to be carrying over $800 in cash.

After Freeman was detained, officers conducted a thorough search of both the main house and the small, unattached building. The small, unattached building was a ten-foot-by-ten-foot recording studio, with a seating area and a singing booth. When the officers entered the studio they found two more men inside.

3

They also recovered a loaded .38 caliber Smith & Wesson revolver and a rifle from the recording studio's attic.

When they searched the main house, officers discovered a loaded, chambered semi-automatic Glock pistol with hollow-point bullets on the nightstand in the home's only usable bedroom.[4] Two baggies of marijuana were lying next to the pistol, in plain view. Officer Bryant testified that all three of the weapons recovered from the property—the revolver, the pistol, and the rifle—were deadly weapons that were capable of causing death or serious bodily injury.

Officers also found an opened bottle labeled as promethazine and codeine phosphate syrup in a shoe box on a chair next to the nightstand. A second shoe box that contained eight additional, unopened bottles of what appeared to be the same codeine cough syrup was found in the bedroom closet. The officers also found men's clothes fitting someone Freeman's size in the bedroom, as well as mail addressed to Freeman at that address. In particular, officers found a cable work order for that address that was dated earlier that week and listed Freeman as the customer. Officer Bryant concluded, based upon the clothes and mail, that the bedroom where the codeine and loaded Glock were found belonged to Freeman.

In the kitchen of the main house, officers found a beaker lying on the counter, a scale, and a knife that could be used to manufacture crack cocaine.

---

4     The second bedroom in the main house was being used for storage.

4

They also found several baggies in one of the kitchen drawers, each containing what appeared to be a "cookie" of crack cocaine. The crime lab later determined that one of those baggies contained 32.1 grams of crack cocaine.[5] Officers also found a recent electric bill for the property in the kitchen area that was addressed to Freeman. Inside the black Chevy Impala parked in the driveway, officers also found paperwork indicating that Freeman was doing business as "Full Metal Jacket Records," and bank records for Full Metal Jacket Records listing 5315 Keystone Street as the business's address.

Freeman's mother testified that she owned the home at 5315 Keystone, but had moved out three years before officers searched the property. She testified that another one of her sons lived in the house with his son and another man. She also testified that Freeman did not live in the house, but he did spend a lot of time in the recording studio he built in the back of the property. According to Freeman's mother, ten people, including herself and Freeman, received mail at the house.

## Legal Sufficiency of the Evidence

In his first and second issues, Freeman challenges the sufficiency of the evidence supporting his convictions and the deadly weapon finding.

---

[5] The criminalist who tested the contents of the baggie testified that she weighed all of the baggies, but only tested the contents of one because even if all of the other baggies contained crack cocaine, the total amount would not exceed 200 grams, and therefore would not move the offense into the next penalty group.

## A.    Standard of Review

We review challenges to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)).  Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Brooks*, 323 S.W.3d at 899 ("Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt").  In viewing the record, direct and circumstantial evidence are treated equally.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The *Jackson* standard gives full play to the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton*, 235 S.W.3d at 778; *see also Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of

6

the testimony presented by the parties.") We presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We also defer to the fact-finder's evaluation of the credibility and weight of the evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

## B. Possession with Intent to Deliver

To demonstrate possession of cocaine with intent to deliver, the State is required to show that (1) Freeman knowingly or intentionally; (2) possessed; (3) cocaine; (4) in an amount greater than two but less than four hundred grams; (5) with the intent to deliver the cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .112(a), (d) (West 2010). Likewise, in order to demonstrate possession of codeine syrup with intent to deliver, the State is required to show that (1) Freeman knowingly or intentionally; (2) possessed; (3) codeine cough syrup;[6] (4) in an amount greater than 400 grams by aggregate weight; (5) with the intent to deliver the codeine cough syrup. *See* TEX. HEALTH & SAFETY CODE

---

[6] TEX. HEALTH & SAFETY CODE ANN. § 481.105(1) (West 2010) (defining Penalty Group 4 codeine as "a compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams"); *see also Miles v. State*, 357 S.W.3d 629, 636 (Tex. Crim. App. 2011) (describing Penalty Group 4 codeine as "codeine cough syrup").

ANN. §§ 481.105(1), .114(a), (e) (West 2010). Freeman is only challenging the "possession" element of each offense.[7]

The State need not show that a defendant exercised exclusive control over the controlled substance, but, when a defendant does not have exclusive control, the State must show additional affirmative links between the defendant and the contraband. *Cedano v. State*, 24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The affirmative links rule, which protects innocent bystanders from conviction based solely upon their fortuitous proximity to someone else's narcotics, simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005)). The affirmative links must raise a reasonable inference that the accused knew of and controlled the contraband. *Dickerson v. State,* 866 S.W.2d 696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Texas courts have identified "many non-exhaustive factors" that may demonstrate a link to contraband. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex.

---

[7] Although Freeman cites the applicable law regarding the element of intent to deliver, he does not apply the law to the facts of this case or provide any relevant analysis. Accordingly, we will limit our discussion to the only element Freeman adequately challenges—possession.

App.—Houston [1st Dist.] 2002, pet. ref'd). These factors include (1) the accused's presence when a search is conducted, (2) whether the narcotics were in plain view, (3) the accused's proximity to and the accessibility of the narcotics, (4) whether the accused was under the influence of narcotics when arrested, (5) whether the accused possessed other contraband or narcotics when arrested, (6) whether the accused made incriminating statements when arrested, (7) whether the accused attempted to flee, (8) whether the accused made furtive gestures, (9) whether there was an odor of contraband or narcotics, (10) whether other contraband or narcotic paraphernalia was present, (11) whether the accused owned or had the right to possess the place where the narcotics were found, (12) whether the place in which the narcotics were found was enclosed, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). These factors constitute "a shorthand way of expressing what must be proven to establish that [narcotics] were possessed knowingly." *Roberson*, 80 S.W.3d at 735. The number of linking factors present is not as important as the "logical force they create to prove" that an offense was committed. *Id.* There is no set formula necessitating a finding of an affirmative link, but rather, affirmative links are established by the totality of the

9

circumstances. *Sosa v. State*, 845 S.W.2d 479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

In support of his insufficiency challenge, Freeman argues that there were no affirmative links connecting him to either the cocaine or the codeine cough syrup found in the main house. To the contrary, Officer Bryant testified that the codeine syrup was found in Freeman's bedroom, along with recent mail addressed to Freeman at that address, and clothes that Officer Bryant opined belonged to Freeman. The crack cocaine was discovered in the kitchen, along with drug-manufacturing paraphernalia, and more mail addressed to Freeman at that address. Furthermore, Officer Jacobs testified that she witnessed Freeman selling a small amount of crack cocaine to a confidential informant from the front doorway of the main house only days before. Freeman, who operated his music business out of the studio behind the main house, spent a considerable amount of time at the property. Both the codeine syrup and the crack cocaine were easily accessible to Freeman, who had access to both buildings. Freeman also had over $800 in cash on him when he was arrested.

Freeman acknowledges this evidence but argues that the mail and clothes found in the home are insufficient to link him to the narcotics, because several other people also received mail at that address, and the clothes found in the bedroom could have belonged to any of the other seven male suspects identified in

10

the offense report. Freeman further argues that he was in the studio when the warrant was executed and that, at most, the evidence (i.e., the mail, the bank records) merely links him to the studio which shares a mailing address with the main house. Freeman also argues that Officer Jacobs's testimony that she saw him sell crack cocaine to an informant from the front door of the main house five days prior to the execution of the search warrant is too remote in time to affirmatively link him to the narcotics.

We recognize that there was evidence of the presence of other men in both the main house and the studio at the time of the search, and testimony that other men lived in the main house and that several people received their mail at that address. We also acknowledge that the sale to the informant occurred several days before the search. However, in a legal-sufficiency review we are required to defer to the jury's weight determinations and resolve inconsistencies in the evidence in favor of the verdict. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Williams*, 235 S.W.3d at 750.

Viewing the evidence in the light most favorable to the verdict, we conclude that the logical force from these links is sufficient for the jury to have concluded beyond a reasonable doubt that Freeman exercised care, custody, control, or management over both the cocaine and the codeine cough syrup recovered at the property. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

11

## C.    Deadly Weapon Findings

A deadly weapon finding can be made if a deadly weapon "was used or exhibited during the commission of a felony offense." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West Supp. 2012). Thus, "we must determine whether a rational trier of fact could have found beyond a reasonable doubt that [Freeman] used the [revolver, the pistol, or the rifle] to facilitate possession and delivery of the narcotics." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Id.*; *see Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (holding that "use" of deadly weapon "extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony"). The term "exhibit" requires a weapon to be consciously shown, displayed, or presented to be viewed. *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941. Thus, the real question is whether the weapons that were recovered were found to have facilitated Freeman's possession and distribution of the narcotics also found at the residence. *See Coleman*, 145 S.W.3d at 655.

Here, officers executing the search warrant found a Glock pistol loaded with hollow-point bullets in Freeman's bedroom. The Glock, which was in plain view

12

on a nightstand, was easily accessible to Freeman, who was carrying over $800 in cash. Officers also found a large amount of codeine cough syrup in close proximity to the loaded pistol and cocaine in the kitchen. *See Coleman*, 145 S.W.3d at 654 (upholding deadly weapon finding when guns and safe containing drugs were found in separate rooms of defendant's house, in spite of fact that defendant was handcuffed in police car when weapons were discovered).

Viewing the evidence in the light most favorable to the jury's finding, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Freeman used the guns to facilitate possession and delivery of the narcotics. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Coleman*, 145 S.W.3d at 655.

We overrule Freeman's first and second issues.

### *Improper Jury Arguments*

In his third and fourth issues, Freeman contends that the State made two improper jury arguments that deprived him of a fair trial.

### A. Standard of Review

Permissible jury argument by the State generally falls into four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) pleas for law enforcement; and (4) response to opposing counsel. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); *Dominguez v. State*, 125 S.W.3d 755, 763 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Even when an argument

exceeds the permissible bounds of these approved areas, it will not constitute reversible error unless, in light of the record as a whole, the argument is manifestly improper or injects new, harmful facts into the case, *see Jackson*, 17 S.W.3d at 673–74, and affects the defendant's substantial rights. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (improper jury arguments are generally considered non-constitutional error); *see also* TEX. R. APP. P. 44.2(b) (non-constitutional errors not affecting substantial rights are disregarded.). In determining whether a defendant's substantial rights are affected, we balance three factors: 1) the misconduct's severity, 2) the measures adopted to cure the misconduct, and 3) the certainty of punishment without the misconduct. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

To preserve jury argument error, a defendant must contemporaneously object and obtain an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Dominguez*, 125 S.W.3d at 763. If the objection is sustained, the defendant must request an instruction to disregard the argument and, if granted, must move for mistrial. *Cockrell*, 933 S.W.2d at 89; *Dominguez*, 125 S.W.3d at 763.

### B.    "All cops are liars"

In his third issue, Freeman argues that the State impermissibly argued that the only way the jury could reach a verdict of "not guilty" was if the jurors

concluded that all of the police were "lying" under oath. Although he acknowledges that he never objected to the State's comments at trial, he argues that we should nevertheless reach this argument based upon the Supreme Court's opinion in *Living Centers of Texas Inc. v. Penalver*, 256 S.W.3d 678, 680–81 (Tex. 2008). However, the Court of Criminal Appeals has held that a defendant's failure to object to an improper jury argument in a criminal case forfeits his right to complain about the jury argument on appeal. *See Cockrell*, 933 S.W.2d at 89 (holding defendant's failure to object to jury argument, or failure to pursue adverse ruling on his objection to jury argument, forfeits his right to complain about jury argument on appeal); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (holding defendant's "right" not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by failure to insist upon it).

We overrule Freeman's third issue.

### C. "Pit bull dog owners are drug dealers"

In his fourth issue, Freeman complains that the trial court erred in denying his request for an instruction to disregard the State's argument regarding a connection between drug dealers and pit bull dogs. During its closing argument, the State argued: "This is [Freeman's] cash. It's right here. You can read the inventory on the front of it. Drugs, cash. Oh, let's not forget all the guns. But we'll get back to that because what do drug dealers use to protect their products?

They use guns. They use pit bulls. That happened to be there, too." The defense objected on the ground that the State was arguing facts outside the scope of the record (i.e., that Freeman owned the pit bull dogs found at the residence). The court sustained the objection. The defense then moved for an "instruction regarding the pit bulls." The court denied that motion, but instructed the State to "stay in the record, please." Freeman argues that he was harmed by the State's argument, which was intended to arouse the passions and prejudices of the jury.

In this case, the evidence demonstrated that two pit bull dogs were in the backyard, between the main residence and the recording studio, when the warrant was executed, and that the dogs were so aggressive that one of the officers discharged his weapon to protect himself and the other officers from the animals. The evidence also linked Freeman to both buildings, as well as the narcotics and weapons the officers found inside them. Officer Bryant also testified that firearms are normally involved to protect the narcotics. The State's comment that the aggressive, pit bull dogs on the property were also there to protect the narcotics is a reasonable, logical deduction, and as such, was not improper. *See Jackson*, 17 S.W.3d at 673 (permissible jury argument by State includes reasonable deductions from evidence).

We overrule Freeman's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

## PER CURIAM

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.   TEX. R. APP. P. 47.2(b).