**LIVING CENTERS OF TEXAS, INC., Cyndi Brown, LNFA, and Kimberly Bordovsky, DON, Petitioners,**

v.

Augustine **PEÑALVER,** Individually and as Independent Executor of the Estate of Maria Belia Peñalver, Deceased, and Ramon Peñalver, Respondents.

No. 06–0929.

Supreme Court of Texas.

Jan. 25, 2008.

Diana L. Faust, R. Brent Cooper, Devon J. Singh, Cooper & Scully, P.C., Dallas TX, Thomas A. Countryman, Fulbright & Jaworski L.L.P., San Antonio TX, Lori Campione Ferguson, Hanson Bridgett Marcus Vlahos & Rudy LLP, Sacremento CA, for Petitioners.

George W. Mauze II, Mauze Law Firm, San Antonio TX, for Respondents.

PER CURIAM.

Living Centers of Texas, Inc., defendant in a wrongful death suit, stipulated liability. During final argument of the trial on damages, plaintiff's counsel compared Living Centers' lawyer's attempts to minimize damages to a World War II German program in which elderly and infirm persons were used for medical experimentation and killed. Concluding that the jury argument was improper and incurable, we reverse and remand for a new trial.

Belia Peñalver moved into a nursing home in 1997. In September 2000, a nursing home employee dropped Belia, who was then 90 years old, while transferring her from a wheelchair to a bed. She died the next day from injuries suffered in the incident. Belia's sons sued Living Centers of Texas, Inc., its administrator, and its director of nursing (collectively, "Living Centers") seeking wrongful death and survivor damages.

A first jury trial resulted in judgment in favor of the Peñalvers for $356,000 actual and $362,000 punitive damages, reduced from $500,000 when the trial court applied the statutory cap on punitive damages. The court of appeals reversed and remanded for a new trial because of improperly

admitted evidence of previous falls at the nursing home. Before the second trial, Living Centers stipulated that its negligence proximately caused Belia's injuries and death, so the only issue at trial was the amount of damages.

During closing argument at the second trial, the Peñalvers' counsel referred to Germany's World War II T–4 Project and defense counsel's trial conduct:

> In World War II the Germans had a project called T–Four. You probably read about it in history books.

> But what they did is they took all the people who they thought were inferior in society, primarily older people, impaired people, and they used them for experiments. They killed them. Over 400,-000. That culture 60 years ago didn't consider the impaired and elderly valuable.

> Our culture has never looked at that. We went to war to stop that, the biggest war in the history of the world to stop those atrocities that were going on. And we're not at the point where we're tolerant today, as the defense would like you to be, of this wrongful death.

> . . . .

> But [the defense lawyers'] job here is to convince you that the damages are insignificant to minimize the damages. How have they done that? At the very beginning in opening statement [they] said they only have two defenses, if you want to call it defense. She is old and she is impaired.

> . . . .

> So it really goes back to that, the initial issue, where are we as a society? Have we regressed to 1944, 1945 Germany? Have we regressed or gone ahead so far now, 60 years later now, we have a different attitude, that a wrongful death of an elderly or impaired person is not every bit as significant and has every bit as significant damages as the wrongful death of anyone else?

Living Center's counsel did not object to the argument, but attempted to counter it by arguing that "there are no Nazis in this courtroom" and "I've never been accused of being a Nazi before."

The jury awarded almost three times the actual damages awarded in the first trial. The second jury awarded actual damages of $510,000 to Belia's estate and $300,000 to each of her two sons—a total of $1,110,000. Living Centers filed a motion for new trial based, in part, on allegations that the Peñalvers' jury argument as to the T–4 Project was improper, incurable, and harmful. The trial court denied the motion for new trial.

Living Centers appealed. The court of appeals affirmed, with one justice dissenting. 217 S.W.3d 44. In its petition for review, Living Centers continues to complain of the final jury argument which criticized Living Centers' counsel and referenced Germany's World War II T–4 Project.

■■■ Error as to improper jury argument must ordinarily be preserved by a timely objection which is overruled. *Tex. Employers' Ins. Ass'n v. Haywood*, 153 Tex. 242, 266 S.W.2d 856, 858 (1954). The complaining party must not have invited or provoked the improper argument. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (1979). Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured. In such instances the argument is incurable and complaint about the argument may be made even though objection was not timely made. *See* Tex. R. Civ. P. 324(b)(5); *Haywood*, 266 S.W.2d at 858. To prevail on a claim that improper argument was incurable, the complaining party generally must show that the

argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects. *See Haywood*, 266 S.W.2d at 858. The test is the amount of harm from the argument:

> whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.

*Id.* But jury argument that strikes at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts is incurably harmful not only because of its harm to the litigants involved, but also because of its capacity to damage the judicial system. Such argument is not subject to the general harmless error analysis.

In *Reese*, this Court discussed different types of jury argument that constitute incurable error. For example, appeals to racial prejudice adversely affect the fairness and equality of justice rendered by courts because they improperly induce consideration of a party's race to be used as a factor in the jury's decision. *See Reese*, 584 S.W.2d at 840 (citing *Haywood*, 266 S.W.2d at 858); *see also Moss v. Sanger*, 75 Tex. 321, 12 S.W. 619, 620 (1889). Unsupported, extreme, and personal attacks on opposing parties and witnesses can similarly compromise the basic premise that a trial provides impartial, equal justice. *See Reese*, 584 S.W.2d at 840 (citing *Howsley & Jacobs v. Kendall*, 376 S.W.2d 562 (Tex.1964) and *Sw. Greyhound Lines, Inc. v. Dickson*, 149 Tex. 599, 236 S.W.2d 115 (1951)). Further, accusing the opposing party of manipulating a witness, without evidence of witness tampering, can be incurable, harmful argument. *See Howsley & Jacobs*, 376 S.W.2d at 565–66.

■ The serious effects of arguments not based on evidence or invited by opposing counsel, such as the one under consideration here, are recognized in our Rules of Civil Procedure. Rule 269 provides that during final arguments, "[m]ere personal criticism by counsel upon each other shall be avoided, and when indulged in shall be promptly corrected as a contempt of court." Tex. R. Civ. P. 269(e). Trial courts are not required to wait for objections before correcting improper argument, but should guard against such conduct and correct it *sua sponte*. Tex. R. Civ. P. 269(g).

Incurable argument is, however, rare. Not all personally critical comments concerning opposing counsel are incurable. But arguments that strike at the courts' impartiality, equality, and fairness inflict damage beyond the parties and the individual case under consideration if not corrected. Such arguments damage the judicial system itself by impairing the confidence which our citizens have in the system, and courts countenance very little tolerance of such arguments. *See Reese*, 584 S.W.2d at 840 ("The injection of new and inflammatory matters into the case through argument has in exceptional instances been regarded as incurable by an instruction.... [A]n affront to the court and the equality which it must portray will be dealt with harshly.").

■ The argument which Living Centers complains of struck at Living Centers and its trial counsel by comparing trial counsel to perpetrators of the T–4 Project atrocities. The T–4 Project was brought up only once during trial when, upon inquiry by the Peñalvers' counsel, a witness testified that he was not familiar with the program. There was no evidence that Living Centers either intended to injure or kill Belia or that Living Centers performed medical experiments on her. The extreme final argument cannot be said to

have been invited by the actions of Living Centers' counsel in pointing out what the evidence clearly showed: Belia was elderly and had certain impairments that accompanied the aging process. The Peñalvers' improper comments were not inadvertent, and the jury argument was designed to incite passions of the jury and turn the jurors against defense counsel for doing what lawyers are ethically bound to do: advocate clients' interests within the bounds of law. Counsel for Living Centers was entitled to urge a smaller damages amount than the plaintiffs sought without being painted as modern-day equivalents of T–4 Project operators who experimented on and purposefully killed humans.

The argument struck at the integrity of the courts by utilizing an argument that was improper, unsupported, and uninvited. Failure to deal harshly with this type of argument can only lead to its emulation and the entire judicial system will suffer as a result.

Our analysis and conclusion is not altered because it was Living Centers' counsel who first used the term "Nazi." The right to complain of improper, incurable jury argument is not lost by counsel's attempting to respond to and reduce the effect of such argument. *See* Tex. R. Civ. P. 269(e); *Panhandle & S.F. Ry. Co. v. Huckabee,* 216 S.W. 666, 668 (Tex.Civ.App. 1919).

We agree with the dissenting justice in the court of appeals: the argument complained of struck at the heart of the jury trial system, was designed to turn the jury against opposing counsel and his clients, and was incurable. The judgment of the court of appeals is reversed, and the case is remanded for a new trial.