**Opinion issued August 31, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01127-CV

————————————

## ROSA WARD, Appellant

## V.

## MARK ANTHONY HARPER, Appellee

On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 946908

## MEMORANDUM OPINION

After Rosa Ward's fourteen-year-old son, J.C., was injured in an automobile accident, Ward sued appellee Mark Anthony Harper for J.C.'s personal injuries and medical expenses. The jury awarded $300 to Ward for J.C.'s medical

expenses and $3,500 to J.C. for his past physical pain, mental anguish, and physical impairment.  Ward appeals the jury's verdict in her favor, arguing that the jury's award of $300 for medical expenses was against the great weight and preponderance of the evidence and that Harper's trial counsel made an improper jury argument.  We affirm.

## Background

After drinking beer with Rosa Ward's family at a Sunday afternoon gathering, Mark Harper departed in his car, bringing J.C. along with him.  Harper lost control of the vehicle while speeding.  The car rolled over, and J.C. was injured and taken to a hospital by ambulance.  After being released, he was treated by his pediatrician and a chiropractor.

Harper pleaded guilty to driving while intoxicated.  He was sentenced to serve two years in a state jail, but his sentence was probated to community supervision for four years.  As part of the conditions of community supervision, Harper was ordered to pay restitution in the amount of $13,761.30, at the rate of $362 per month, directly to J.C.'s health care providers for the medical expenses incurred because of the accident.  Specifically, Harper was ordered to pay:

| $ | 11,147.80 | to Memorial Hermann Hospital System |
|---|---|---|
| | 1,169.00 | to Humble Radiology Associates, PA |
| | 851.00 | to ACS Primary Care Phys. SW PA |

2

547.50   to City of Houston EMS, and

46.00   to North Houston Pathology Assoc. LLP.

Ward later sued Harper, both individually and on behalf of J.C.  At trial, the evidence showed that J.C.'s medical bills totaled $14,689.30.  Specifically, bills were admitted to show the following charges:

$   11,491.80   to Memorial Hermann Hospital System

1,437.00   to Humble Radiology Associates, PA

851.00   to ACS Primary Care Phys. SW PA

547.50   to City of Houston EMS, and

362.00   to Dayton Chiropractic Center.

Two bills from Humble Radiology Associates were admitted into evidence.  The first bill showed a balance due of $1,169.00.  Another bill dated one month later added a $268.00 charge for a CAT scan performed in the emergency room on the day of the accident, resulting in a cumulative past-due balance of $1,430.00.  All of the medical bills, except the one from Dayton Chiropractic Center, showed that the date of service was the same as the date of the accident.

Harper testified that he was ordered to pay restitution in the amount of $13,761 for J.C.'s medical bills and that he had been making monthly payments. He agreed that he had not paid any money directly to Ward, but he explained that

3

the restitution payments are made through the Harris County Community Supervision and Corrections Department.

Ward testified that she was liable for the medical expenses and that she had not received any payments from Harper or the State of Texas. She also testified that she had not received notice from any hospital or health care provider that some of the medical bills had already been paid. On cross-examination, she testified that she had a conversation about medical bills with the attorney appointed to represent her son, but she denied saying that she knew some of the medical bills had been paid by someone else.

In closing arguments, Ward's attorney argued to the jury that the total amount of medical bills was "$14,250, rounded off." He said, "There is nothing in the evidence that would justify you awarding one dime less than . . . $14,250." Ward's attorney then argued for past and future noneconomic and exemplary damages, urging the jury to award a total of $141,750.

Harper's attorney began his closing remarks by saying, "$125,000 to maybe $135,000. That's why we're here. That's what they're asking for as a result of this accident. At the very beginning, I told you why this case happened and why we're here, that's for greed, plain and simple." Ward's counsel did not object to these arguments. The jury ultimately found in favor of Ward, awarding her a total of

4

$3,500 for J.C.'s past physical pain, mental anguish, and physical impairment, and $300 for his medical expenses. Ward appealed.

## I.     Sufficiency of the evidence

In her first issue, Ward argues that the jury's award of $300 for medical expenses was against the great weight and preponderance of the evidence, and it should have been higher. This argument challenges the factual sufficiency of the evidence to support the judgment.

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). A reviewing court must consider and weigh all of the evidence, and it can set aside a verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, as to be clearly wrong and unjust. *Id*. at 242; *Doctor v. Pardue*, 186 S.W.3d 4, 17 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We may not merely substitute our judgment for that of the jury. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

To recover medical expenses, a claimant must prove that the charges incurred were reasonable and necessary. *Doctor*, 186 S.W.3d at 17. The jury has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). We will not disregard the jury's damages finding merely because "the jury's reasoning in arriving at its figures may be unclear." *Henry v. Masson*, 333 S.W.3d 825, 838 (Tex. App.— Houston [1st Dist.] 2010, no pet.).

On appeal, Ward contends that the award of $300 was too little, arguing that there was no rational basis for the jury's calculation of past medical care expenses. Accordingly, we can focus our analysis on the low end of the range of damages supported by the evidence, as the only basis for reversal would be if the award of $300 was below the minimum amount supported by the evidence. The bills introduced into evidence totaled $14,689.30. These bills include services rendered on the date of the accident, and also a $362 bill for chiropractic services rendered after the accident. But Ward does not suggest in her briefing a particular number to represent the minimum amount of medical expenses supported by the evidence.

Harper does not dispute the reasonableness or necessity of the expenses incurred on the day of the accident. He does argue that J.C.'s visits to the chiropractor were not related to this accident, and thus he challenges the reasonableness and necessity of the $362 bill from the chiropractor. With respect

6

to all medical treatment not challenged on the basis of reasonableness or necessity, Harper argued that he had already been ordered to satisfy all such medical bills by way of restitution. At trial, Harper testified that through the conditions of his probation, he had agreed to reimburse the Wards for J.C.'s medical bills.

Although Harper's judgment of conviction did not include an order of restitution, the subsequent conditions of community supervision did. The initial conditions required the district attorney to determine the amount of restitution to be paid by Harper. Subsequent orders specified that Ward would pay $13,761.30 in restitution, itemized to show amounts owed to specific service providers. The conditions of community supervision required payments to be made to each provider that rendered medical care on the day of the accident. These orders were admitted into evidence at trial, and Harper testified that he was making monthly payments toward restitution.

A comparison of the restitution order and Ward's evidence of the bills for services rendered on the date of the accident shows that some charges were omitted from the amount specified in the restitution order. In particular, the Memorial Hermann bill admitted at trial was $344 higher than the restitution ordered to be paid to Memorial Hermann, and it shows a $344 charge incurred on the date of the accident for medical-surgical supplies. The Humble Radiology bill admitted at

trial was $268 higher than the restitution ordered to be paid to Humble Radiology, including $268 billed for a CAT scan of J.C.'s chest on the date of the accident.

The only provider included among the bills offered into evidence by Ward and excluded from the restitution order was the chiropractor, who treated J.C. after the accident. At trial, Harper disputed the reasonableness and necessity of that treatment. The first visit to the chiropractor came a month after the accident, and a subsequent visit occurred nearly a year after the accident.

There was no evidence presented at trial to suggest that the service providers receiving payments pursuant to Harper's conditions of community supervision were seeking to collect from Ward the difference between the amounts being paid by Harper and the total amounts reflected on the bills. Accordingly, a rational jury could have concluded that the restitution order accounted for all charges actually incurred and owing for reasonable and necessary medical services rendered to J.C. as a result of the accident. The restitution order was entered after all the medical expenses incurred on the date of the accident were invoiced, and under these circumstances the jury could have concluded that the restitution order correctly identified the amounts necessary to fully satisfy the providers.

Based on the evidence presented at trial, a jury could have rationally concluded that all reasonable and necessary medical expenses were incurred on the day of the accident, and that those expenses were being paid by Harper such that

8

no payment was being sought from Ward. Thus, we conclude that the minimum end of the range of damages supported by the evidence is $0.

The jury awarded $300 for medical expenses. Because this award is greater than the low end of the range of damages supported by the evidence, we conclude that the jury's verdict and the trial court's judgment awarding damages in that amount were was not against the great weight and preponderance of the evidence. *See Gulf States Utils.,* 79 S.W.3d at 566. We overrule Ward's first issue.

## II.  Jury argument

In her second issue, Ward argues that Harper's counsel made an improper and incurable jury argument by saying that the case was about "greed." Ward did not contemporaneously object to the argument, but raises her complaint for the first time on appeal.

Ordinarily, error as to improper jury argument must be preserved by a timely objection that is overruled. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008). A complaint of incurable jury argument, however, may be asserted and preserved in a motion for new trial, even in the absence of a timely objection during trial. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). When an argument is so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard it, the prejudicial nature of the argument is

so acute that it is "incurable." *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968).

Incurable argument is rare. *Penalver*, 256 S.W.3d at 681. The test for incurable jury argument is "whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." *Id.* at 681.

In this case, Ward complains that Harper's counsel's single reference to "greed" in his closing argument constituted an incurable jury argument. We disagree. Harper's counsel characterized Ward's request for noneconomic damages in an amount approximately ten times the economic damages as "greed." The word was used once during closing argument in reference to the amount of noneconomic damages sought, the only instance that Ward challenges on appeal. Even to the extent the reference to "greed" was objectionable, the trial court had no occasion to mitigate any harm because Ward never objected.

The nature of this remark was not so inflammatory as to "strike[] at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts." *Compare Penalver*, 256 S.W.3d at 681 (holding that final argument comparing actions of nursing home to Nazi medical experimentation was incurable), *with Queen City Land Co. v. State*, 601 S.W.2d 527, 530 (Tex. Civ.

App.—Austin 1980, writ ref'd n.r.e.) (holding that lawyer's use of word "greed" was not incurable). We conclude that the challenged jury argument in this case was not incurable, and that Ward's complaint about it was waived because she failed to make a timely objection at trial. *See First Nat'l Bank of Bellaire v. David W. Showalter, P.C.*, No. 14-95-01532-CV, 1998 WL 350518, at *8 (Tex. App.— Houston [14th Dist.] June 25, 1998, no pet.) (mem. op., not designated for publication) (holding that appellate complaint that jury argument calling bank's action in accelerating note "pure greed" was waived because comments were not so inflammatory as to be incurable and appellant did not object or request instruction to disregard). We overrule Ward's second issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Bland, Massengale, and Brown.

11