

IN THE
TENTH COURT OF APPEALS

_____

No. 10-13-00020-CV

REX DEAN WILLIAMS, SOPHIA WILLIAMS,
ASHLEY WILLIAMS AND REX DEAN WILLIAMS, II,
                                                                              Appellants
 v.

UNITED ELECTRIC COOPERATIVE SERVICES, INC.,
                                                                              Appellee

_____

From the 413th District Court
Johnson County, Texas
Trial Court No. C2010-00642

_____

## MEMORANDUM  OPINION

_____

Appellants Rex Dean Williams (Rex), Sophia Williams, Ashley Williams, and Rex

Dean Williams, II (collectively, the Williamses) sued Appellee United Electric

Cooperative Services, Inc., alleging that they suffered damages after electricity from a

United power line traveled through inadequately maintained trees and shocked Rex as

he was working on the cable line about ten feet below.[1]  United denied the allegations,

_____

[1] Rex was working in the aerial lift of a bucket truck.

arguing, among other things, that Rex's own negligent conduct caused him to come into direct contact with the live power line. A jury found in favor of United.

The Williamses filed a motion for new trial, quoting the following portion of United's closing argument and contending that "the closing argument of [United's] counsel in this case was reasonably calculate[d] to cause such prejudice to [them] that no reasonable action in response to the argument could eliminate the probability that there would be an improper verdict":

> Now, when you're looking at the different evidence, not just the number of witnesses, but let's look at the credibility of the witnesses. Mr. Johnny Rogers is the one person that they hang their hat on. He's the one person that they say the bucket was down below the cable line. He's the one person that says there was [sic] trees up in that line. Nobody else. Johnny Rogers, as you heard, is a twice-convicted felon.

> But really more importantly than that, that doesn't make him a liar, necessarily, but more important than that, when he first was - - gave a recorded statement in this case, he said the bucket was up near the power line. The day before his deposition that we took in this case, he met the Plaintiffs' counsel. And at his deposition, he said something different. He said the bucket was down below the cable line. And he admitted in his testimony here and in his testimony in his deposition that he changed after meeting with them, and he had an explanation.

> Then he also said that United went to the accident scene that night and stole a branch. And he specifically saw a Ford F150 with a United logo on it that he could see all the way across the yard, from here to over here. And this is after the trees have been removed. At that time, the trees hadn't been removed. But he could see all the way across the yard and see this F150.

> Well, the weekend before he testified, he met with Plaintiffs' counsel again. And he again changed his story. He said, well, maybe it wasn't F150, maybe it was Chevrolets, they all look alike. But most importantly, ladies and gentlemen - -

> ….

We produced evidence that we didn't have a Ford F150. This is our vehicle sheet. You can take a look through it. There was no Ford F150s in our fleet at the time or now or ever. So we know that that testimony wasn't true. *But they got to him before he got here to testify so he could change his story again.*

[Emphasis added.] The motion for new trial was overruled by operation of law.

In their sole issue, the Williamses contend that a new trial is warranted because United used its jury argument to lodge improper and unfounded accusations that the Williamses' counsel "manufactured" a case and inappropriately influenced a material witness, thereby calling into question the integrity of the judicial system.

**Preservation**

A complaint about improper jury argument must ordinarily be preserved by a timely objection that is overruled. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008); *see* TEX. R. APP. P. 33.1. A complaint of incurable argument, however, does not require an objection. A party is nevertheless required to present any complaint regarding incurable jury argument in a motion for new trial to preserve the complaint for review. TEX. R. CIV. P. 324(b)(5); *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009).

At the outset of their argument, the Williamses contend that United adopted a strategy of attacking their counsel beginning in its opening statement when United told the jury that the Williamses' "very clever" lawyers and "very clever and sneaky experts" had "manufactured a case." The Williamses assert that this theme of encouraging the jury to question the integrity of their counsel continued in United's closing argument, including when United accused their counsel of "piecing together

half-truths." The only complaint that has been preserved for review, however, is whether the portion of United's closing argument quoted above constituted incurable jury argument. To the extent the Williamses contend that any other statements by United were improper or incurable argument, those complaints are not preserved for review because they were not objected to during trial and/or were not presented in the Williamses' motion for new trial. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 324(b)(5); *Phillips*, 288 S.W.3d at 883.

### Improper Argument?

The Williamses contend that United's closing argument was improper because United's statement that the Williamses' trial counsel "got to [Johnny Rogers] before he got here to testify so he could change his story again" was an improper accusation that opposing counsel manipulated a witness. *See Beavers ex rel. Beavers v. Northrup Worldwide Aircraft Servs., Inc.*, 821 S.W.2d 669, 680 (Tex. App.—Amarillo 1991, writ denied) ("Attacks on the integrity of opposing counsel are improper."). United responds that the argument was not improper because it was an argument related to the credibility of Rogers, not an attack on opposing counsel, and because there was support in the record for the statement.

United first asserts that the argument was proper because it did not make a direct attack on opposing counsel. United argues that the Williamses had to *infer* that the statement meant that their trial counsel did something improper to elicit the change in Rogers's testimony and that the most logical inference that can be drawn from its closing argument is instead that Rogers lacked credibility and was willing to do

whatever was necessary to help the party he personally saw seriously injured. United contends that this is revealed by reviewing the rest of its closing argument related to Rogers, which was as follows:

> But more importantly than that, let's go to 10.1 - - 10-1. This is where Johnny Rogers testified that the branch was that was taken. Y'all remember that testimony. Johnny Rogers said that's where the branch was that was taken. He was asked, "Was this the branch?"
>
> "No, that ain't the branch. It was right there where that circle is."
>
> Now, the important thing to note here is that this photograph was taken by David Stone. It was taken when he got to the accident scene at about 3 or 3:30. The branch was not allegedly stolen until sometime that night. So the branch would still be there. The branch was stolen after this photograph was taken. Now, when Mr. Rogers was circling this photograph, he didn't realize that. He just said that's where it was. But this is taken immediately after the accident, before the time that this truck supposedly came up and stole it. So why isn't there a branch there? Because there wasn't ever a branch. Something that Johnny Rogers imagined, made up, I don't know why. But if the branch would have been there, it would be in this photograph because that photograph was taken before the time that it was stolen.

We believe, however, that although the overall purpose of United's closing argument regarding Rogers appears to be to convince the jury that Rogers lacked credibility, the specific comment that the Williamses' trial counsel "got to" Rogers does imply that the Williamses' trial counsel inappropriately influenced Rogers in some way.

United next asserts that the argument was proper because there was support in the record for the statement. United cites *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835 (Tex. 1979), in which the supreme court held that defense counsel's comments that plaintiff's counsel, his client, and his client's doctors had engaged in a scheme to increase plaintiff's medical expenses were not improper because there "was direct

evidence, as well as inferences from the evidence, which supported the argument." *Id.* at 836-37.

Rogers's relevant testimony in this case was as follows:

> Q. Mr. Rogers, my name is [Defendant's Counsel], and we've only met at your deposition, correct?
>
> A. Yes, sir.
>
> Q. Do you recall that day when we met there in Graham at the hotel - -
>
> A. Yes, sir.
>
> Q. - - and took your deposition? The day prior to that deposition, did you meet with someone from [Plaintiffs' Counsel's] office?
>
> A. Yes. There was a gentleman that worked for Mr. Williams had come to my door, knocked on my door. I went down, showed them where the accident had happened.
>
> Q. Okay. And then you also met with [Plaintiffs' Counsel] this Sunday, correct?
>
> A. Sir?
>
> Q. You met with [Plaintiffs' Counsel] this Sunday, this last Sunday?
>
> A. Yes, sir.
>
> Q. Okay. You've never met with me outside of your deposition and courtroom today, correct?
>
> A. No, sir, never seen you before.
>
> ….
>
> Q. Prior, have you ever said before that the bucket was up by the power lines?

A.    The power line I was talking about, sir, yes, was the cable. That's what I thought he was talking about.

Q.    Isn't it true, sir, that you gave a recorded statement prior to your time that you met with [Plaintiffs' Counsel's] associate, that you gave a recorded statement?

A.    I give what now?

Q.    A recorded statement to Mr. Denny.

A.    Yes.

Q.    And in that statement, you said that the bucket was up close to the power lines, correct?

A.    The power line, yes.

Q.    And then after you met with [Plaintiffs' Counsel's] associate, when you gave your deposition you then said that the bucket was down by the cable line, correct?

A.    I said it was by the power line. That's where I thought the power line was was the cable. That's where I thought that he got electrocuted at. That's where the bucket was at when he got electrocuted.

Q.    Okay. So your testimony from the day that you gave your recorded statement to the day that you gave your deposition changed, didn't it?

A.    You trying to say that I'm saying the first time it was up in the very top wires? Is that what you're saying?

Q.    That's what your recorded statement said, isn't it, sir?

A.    I never said that it was in the top wires. I said it was in the cables. It was in the wires in the cable. That's where he was at working, where he got electrocuted at. You're saying he got electrocuted in the top cable. He's working at the bottom cable down there. It's no way that he could get - - raise that bucket up and get electrocuted and bring it back down in the same position where it was at from the first buzz to the second buzz.

Q.     Sir, you're specifically - - your - - in your recorded statement, you told Mr. Denny that the bucket was up near the power line and that you thought that Mr. Williams may have reached up and touched his hand on the power line or something; isn't that correct?

A.     Yes, I may have.

Q.     And then in your deposition, you then said he was down at the cable line, correct?

A.     He was at the cable line.

Q.     That was after you met with [Plaintiffs' Counsel's] associate, correct?

A.     Yes.

….

Q.     Okay.  And was the branch that you saw over on this side of the yard?

A.     It was - - branch was laying right back here.  He pulled in right back here, right up here, got and walked back there, picked the limb up, went and got in his truck, drove off.

Q.     You testified in your deposition that the truck that went and picked it up was a Ford F150, correct?

A.     Yes, sir, I believe that's what it was, sir.  It was a white truck.

Q.     White F150?

A.     I understand that y'all don't have or United Co-op don't have Ford.  They got all Chevrolets.  Between a different Chevrolet and a Ford and a Dodge or GMC, it's not that much difference.  Nighttime, it's white.

Q.     Okay.  Who told you that United didn't have any Fords?

A.     Who told me that?

Q.     Yeah.

A.      [Plaintiffs' Counsel] here.  I asked him, you know.

Q.      When you were meeting with him this Sunday?

A.      Yes.

Q.      But in your deposition - -

A.      It was - - it was mentioned.

Q.      So in your deposition you said it was a Ford F150 though, correct?

A.      Right.

Based on the foregoing testimony, we agree that much of United's argument regarding Rogers was supported by the record.  Rogers testified on cross-examination that he had said that Rex was near the "power line" when the incident in question occurred but that after meeting with the Williamses' trial counsel, his testimony changed to reflect that Rex was by the "cable line."  He explained this change by stating that he had initially thought that the cable line was the power line.  This testimony supported United's argument that although he gave an explanation for it, Rogers did, in fact, change his testimony about the location of the bucket when the incident occurred after meeting with the Williamses' trial counsel.

Rogers further testified that he said in his deposition that the person who removed a branch from the accident scene was in a white F-150 truck.  He testified at trial, however, that the truck was simply white.  When asked if it was a white F-150 as he had previously said, Rogers replied that he understood that United did not have Fords, that the makes of various trucks are not that different, and that it was nighttime.

Rogers explained that he knew United did not have Fords because the Williamses' counsel told him so when he asked about it during a pretrial meeting. This testimony supported United's argument that Rogers changed his testimony again after meeting with the Williamses' counsel. But there was no direct testimony, and no inferences could be made from the testimony, that the Williamses' counsel did anything to inappropriately influence Rogers. The testimony shows that Rogers actually asked the Williamses' counsel about the make of United's trucks and that the Williamses' counsel merely replied that United did not have any Fords. We therefore conclude that United's trial counsel's statement that the Williamses' trial counsel "got to" Rogers was improper argument.

### Incurable Argument?

The question then becomes whether the improper argument was incurable.

> To prevail on a claim that improper argument was incurable, the complaining party generally must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects. *See* [*Tex. Employers' Ins. Ass'n v.*] *Haywood*, [153 Tex. 242,] 266 S.W.2d [856,] 858 [(1954)]. The test is the amount of harm from the argument:
>
>> whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.
>
> *Id.* But jury argument that strikes at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts is incurably harmful not only because of its harm to the litigants involved, but also because of its capacity to damage the judicial system. Such argument is not subject to the general harmless error analysis.

*Living Ctrs. of Tex.*, 256 S.W.3d at 680-81.

The Williamses first argue that the improper argument was incurable because "the attack on [their] counsel involved a central issue in a closely divided case," thus causing substantial prejudice to them and increasing the risk of the rendition of an improper verdict. The Williamses point out that Rogers was the first person on the scene and that his testimony supported the Williamses' argument on the crucial issue of the location of the bucket when Rex was injured.

But United's comment was very short in duration and occurred at the end of almost two weeks of trial after the jury had heard all of the evidence, including Rogers's explanation of why he changed his testimony, which indicated that the Williamses' trial counsel had *not* inappropriately influenced him. The Williamses' trial counsel also addressed the accusation during rebuttal as follows:

> You know, we've been accused of half-truths, and I kind of resent that. We were also, I guess, accused of talking to Johnny Rogers and saying one thing or another that wasn't true. And I not only resent it, I deny it. We haven't and wouldn't do anything like that.

The Williamses also assert that United's argument that their trial counsel "got to" Rogers was far from an isolated comment; rather, the Williamses state that United's accusations that the Williamses' trial counsel "manufactured" a case out of "half-truths" was a theme in the trial. But, as stated above, the Williamses did not preserve complaints about all of the alleged accusations by United throughout the trial. Furthermore, assuming United did make similar improper allegations about the Williamses' counsel throughout the trial, United's argument that the Williamses' trial

counsel "got to" Rogers was merely one of many similar allegations that the Williamses have not preserved complaints about. We therefore conclude that the short statement that the Williamses' trial counsel "got to" Rogers, considered in its proper setting, was not reasonably calculated to cause such prejudice to the Williamses that a withdrawal by United's trial counsel or an instruction by the court, or both, could not have eliminated the probability that the argument resulted in an improper verdict. *See Living Ctrs. of Tex.*, 256 S.W.3d at 680-81 (quoting *Haywood*, 266 S.W.2d at 858).

The Williamses also argue that the improper argument was incurable "because of the damage it does to the integrity of the legal system." We disagree.

Accusing the opposing party of manipulating a witness, without evidence of witness tampering, can be incurable, harmful argument. *Id.* at 681 (citing *Howsley & Jacobs v. Kendall*, 376 S.W.2d 562, 565-66 (Tex. 1964)). For instance, in *Howsley & Jacobs*, the supreme court held that counsel's comments were incurable when, during closing argument, counsel asked the jury who was more likely to be telling the truth—a man on his deathbed "about to come face to face with his Master" or "a colored boy who had been under the coaching of this battery of lawyers, when he got on there to give words that were not his words." *Howsley & Jacobs*, 376 S.W.2d at 566.

In this case, however, the overall purpose of United's closing argument regarding Rogers, as stated above, appears to be to convince the jury that Rogers lacked credibility, not to suggest that opposing counsel manipulated Rogers's testimony. Furthermore, the evidence did show that the Williamses' trial counsel told Rogers that United did not have any Fords, and the comment that the Williamses' trial counsel "got

to" Rogers is not a direct comment that the Williamses' trial counsel inappropriately influenced Rogers. Thus, although they could have, the jury did not have to infer from the phrase "got to" that the Williamses' trial counsel acted inappropriately. For these reasons, we conclude that the statement that the Williamses' trial counsel "got to" Rogers did not strike at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts such that it was incurably harmful. *See Living Ctrs. of Tex.*, 256 S.W.3d at 680-81.

We overrule the Williamses' sole issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 6, 2014
[CV06]

