In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-18-00069-CV
_____

### IN RE ENTERPRISE REFINED PRODUCTS COMPANY, LLC

**Original Proceeding**
**172nd District Court of Jefferson County, Texas**
**Trial Cause No. E-194,114**

### MEMORANDUM OPINION

Enterprise Refined Products Company, LLC[1] ("Oiltanking") petitions for

mandamus relief from an order granting the motion for new trial filed by the plaintiff,

Michael Stelly, following a jury trial in which the jury apportioned responsibility at

thirty percent for Enterprise and seventy percent for Stelly on findings of general

maritime negligence and premises liability. Stelly fell when he mounted a gangway

_____

[1]Oiltanking Beaumont Partners, L.P. owned the facility at the time of the accident. Through a series of mergers, it is now known as Enterprise Refined Products Company, LLC.

connecting a barge to the dock located on Oiltanking's premises. In addition to ruling that insufficient evidence supported the jury's findings on Stelly's contributory negligence and Stelly's and Oiltanking's proportional responsibility, the trial court ruled that the great weight and preponderance of the evidence supports larger damage awards than the jury awarded for past and future medical expenses, past and future lost earning capacity, and future mental anguish caused by physical disability. Finally, the trial court ruled Oiltanking's jury argument that Stelly should not have been on the gangway because he was supposed to be on light duty due to a previous injury, was improper and so prejudicial that it could not have been cured by an instruction to disregard, and a new trial was required even though Stelly did not make a contemporaneous objection to the argument.

## Standard of Review

A trial court's order granting a new trial after a jury trial is subject to mandamus review. *See In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding). We review the order for abuse of discretion. *Id.* at 178. The order granting a motion for new trial must state a reason for which a new trial is legally appropriate, such as a well-defined legal standard or a defect that probably resulted in an improper verdict, and be specific enough to indicate that the trial court derived the articulated reasons from the particular facts and circumstances of the case at

hand. *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688-89 (Tex. 2012) (orig. proceeding). "The order [granting a new trial] must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings." *Id.* at 689. The "significant discretion" of a trial court to grant a new trial "should not, and does not, permit a trial judge to substitute his or her own views for that of the jury without a valid basis." *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 212 (Tex. 2009) (orig. proceeding). If the trial court's articulated reasons for granting the motion for new trial are not supported by the underlying record, the appellate court may grant mandamus relief. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 758 (Tex. 2013) (orig. proceeding).

Evidence Not Supporting Liability Findings

In its order granting Stelly's motion for new trial, the trial court ruled that there was insufficient evidence to support the jury's findings that Stelly's negligence proximately caused his injuries and that Stelly bore seventy percent of the responsibility for the accident. The evidence the trial court noted supports a "no" finding on Stelly's negligence included: (1) documents created by Oiltanking near the time of the accident which did not identify carelessness or negligence by Stelly or blame him for the accident; (2) written notes made by an Oiltanking supervisor

3

that possible causes of the accident included improper placement of the gangway or failure to secure the gangway, not failure or inattention by Stelly; (3) a supervisor's report on which no checkmarks were placed next to indicators for individual violation, improper position or posture for task, overexertion of physical capability or improper speed; (4) Oiltanking's safety manager's report did not note "inattention for footing[]" by Stelly; (5) the eyewitness's statement that Stelly stepped on the gangway in an inappropriate manner was made four months after the accident, and at trial the witness testified that the placement of the gangway left Stelly no choice; (6) although Stelly failed to use three-point contact when stepping onto the gangway, the angle of the gangway did not permit three-point contact and Stelly had to put one foot on the gangway then lean forward to grab the handrails; (7) although Stelly did not use his stop-work authority, there was no evidence he knew the gangway was improperly secured; and (8) although there was evidence that Stelly was an experienced inspector, other people used the gangway without incident, and Oiltanking had similar gangways, there was no evidence that any of those factors were a proximate cause of the accident.

The evidence the trial court noted supported finding liability as to Oiltanking included: (1) Oiltanking's control of the gangway and responsibility for its safe placement; (2) testimony that the safest way to secure the gangway was a 180 degree

4

angle, and tying a gangway at a 45 degree angle is not the preferred method; (3) the gangway was not tied using the preferred method; (4) Oiltanking's safety manager's testimony that all the reporting from the night of the accident indicated the gangway slipped out from under Stelly and there was no good place to tie the runway, and his report noted that the root cause was inadequate workplace layout; (5) Oiltanking used a scaffolding stage platform as a gangway without following the manufacturer's requirements for scaffolding; and (6) the gangway was not anchored to prevent displacement and the gangway's handrails were chain, not equivalent in strength to a structural grade wood beam, and did not extend to the end of the gangway.[2]

The trial court ruled that the jury's finding of seventy percent responsibility on the part of Stelly was based on mere speculation, and that the jury was profoundly impacted by the expert testimony of David Scruton. Scruton told the jury that the only plausible explanation for what caused the gangway to move was that Stelly stepped on the side edge of the gangway. The trial court ruled that this opinion was based on a false premise because the testimony was that Stelly stepped onto the

---

[2]On the general maritime negligence and premises liability questions, the jury found Oiltanking's negligence proximately caused the injuries to Stelly. The evidence regarding Oiltanking's negligence is discussed herein to the extent it bears upon the trial court's order granting a new trial based upon the jury's answers to the proportionate responsibility questions.

gangway, not onto the side edge of the gangway. Additionally, the trial court found that Oiltanking's argument that Stelly failed to properly mount the gangway was based on pure conjecture.

Evidence Supporting Liability Findings

On October 14, 2012, Stelly, an experienced petroleum inspector who had visited Oiltanking's facility hundreds of times, assisted Derek Nix with the inspection of a barge moored to a dock at Oiltanking Beaumont. Before starting the job, Nix noted on his inspection form that he had inspected the jobsite area, there were no dangerous conditions, and there was suitable access to the vessel. They boarded the barge using what Nix agreed was a standard gangway. The line securing the gangway appeared to be taut and secure. Neither Nix nor Stelly noticed anything unusual about the gangway that evening.

After they completed their work on the vessel, the Oiltanking personnel returned across the inclined gangway down to the dock. When Stelly stepped on the gangway, the gangway slid down and sideways and Stelly fell backwards off of the gangway onto the barge. Stelly was in a position where he could not line up exactly with the gangway and he had to step at an angle. According to Nix, the gangway inclined at an angle that made it necessary to step onto the gangway before grabbing the handrails. Nix could not recall whether the handrails extended to the end of the

6

gangway. He believed the gangway could have been tied off more securely. He also believed that Stelly could have placed his foot in a better location. According to Nix, Stelly stepped onto the gangway in an unsafe manner by putting his foot on the corner or the side of the gangway and then stepping up onto the gangway.

Stelly disagreed with Nix's testimony that he stepped on the side or edge of the gangway. Instead, Stelly claimed that he approached the gangway head on, stepped near the center with his left foot and firmly grabbed the left railing with his left hand while he held his gauge line in his right hand. The gangway slid to the left, causing him to fall to the right.

Aaron Bergeron, an Oiltanking employee, testified that he walked the gangways of the facility four or five times a day and never felt unsafe. Bergeron explained that when you step on a gangway, you are supposed to grab hold with both hands first on the handrails and then step one foot at a time directly from the front of the gangway, never from the side, as that would cause the gangway to slide away from you and you would fall. Bergeron was in the control room when the accident occurred. When Bergeron arrived at the gangway Stelly was holding onto the handrails and shaking the gangway, either to reposition it or to make it slide again. Although the optimum was to have the gangway tied perfectly flat, Bergeron did not feel the gangway was tied at an angle that was unsafe. According to Bergeron the

7

gangway at issue was made of the same material and was just as safe as the hydraulic gangways that were also in use at the facility.

A marine surveyor and marine consultant, David Scruton, testified as an expert for Oiltanking. Scruton reviewed the report prepared by Stelly's expert witness, Geoff Webster. In Scruton's opinion, the gangway was appropriately tied. Scruton referred to the International Safety Guide for Tankers and Terminals for the requirements on gangways. According to the manual, the securing lines must have slack. Oiltanking constructed the gangway from an aluminum platform, which is a type of platform used throughout a majority of terminals in the Gulf. It is not at all unusual to have one rope securing the gangway. Because gangways can move for a variety of reasons, to use a gangway safely, a person is supposed to inspect it first and then use three-point contact to access the gangway. If the gangway had been tied with more than one rope, all of the ropes would have had to have slack. Tying the rope at a forty-five degree angle would not make it unsafe. According to Scruton, the only plausible explanation for the accident is that Stelly stepped on the gangway on the side edge, because only that placement would cause the gangway to move in one direction and Stelly to move in the opposite direction.

Merits-Based Review of Liability Findings

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). A trial court abuses its discretion when it substitutes its judgment for that of the jury without a valid basis. *In re Columbia Med. Ctr.*, 290 S.W.3d at 212. "The amount of evidence necessary to support the jury's verdict is far less than that necessary to warrant disregarding the jury's verdict." *In re Zimmer, Inc.*, 451 S.W.3d 893, 906 (Tex. App.—Dallas 2014, orig. proceeding). "Evidence is factually sufficient to support the jury's verdict if the evidence is such that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn therefrom." *Id.*

Stelly argues Scruton's expert opinion was based on data contrary to the actual facts, and therefore properly disregarded by the trial court. However, Nix's testimony that Stelly "put his foot on kind of like the corner or the side of the gangway and then step[ped] up onto the gangway[]" supports Scruton's theory that the manner in which Stelly entered the gangway caused the gangway to move. Furthermore, Bergeron's testimony that safe entry onto a gangway requires "grab[bing] ahold with both hands first on the handrails and then step[ping], one foot at a time, directly from the front of it[;]" and if you step onto it from the side "the

9

gangway will slide away from you and you'll fall over[;]" and Stelly's testimony that "I placed my left foot on [the gangway] and grabbed up with my left hand, because I had my gauge line in my [right] hand" supports the conclusion that Stelly did not use the method required to safely step onto a gangway. As a person with extensive experience boarding barges, Stelly was aware of the proper method of stepping onto a gangway.

The jury heard ample evidence from which it could conclude that Stelly's negligence contributed to the accident. The gangway had been used without incident until Stelly stepped on it on his return to the dock. After the gangway was tied to the dock using one rope, the gangway remained steady while other people crossed from the barge to the dock. There was no evidence or testimony that the rope securing the gangway to the dock failed or loosened. The jury could reasonably infer from the evidence that by stepping to one side, rather than in the middle of the gangway, Stelly's weight caused the gangway to shift away from him, making Stelly fall back onto the barge. From this evidence, the jury could reasonably conclude both that the gangway was unreasonably dangerous and that Stelly's injuries were caused or contributed to by his own negligence. In the order granting a new trial, the trial court reasoned that the jury's findings that Stelly was seventy percent responsible for the accident are against the great weight and preponderance of the evidence because it

was undisputed that Stelly was unable to obtain proper three-point contact due to the configuration of the gangway's railings; however, Stelly testified that he grabbed the railing with his left hand because he was holding a gauge line in his dominant right hand. The jury could infer that Stelly could have grabbed the right railing but did not do so because he was holding something with his right hand. We conclude the trial court clearly abused its discretion by substituting its judgment for that of the jury with regard to the jury's liability findings. *In re Columbia Med. Ctr.*, 290 S.W.3d at 212.

Damages Findings

The trial court ruled that the great weight and preponderance of the evidence supports larger damage awards than the jury awarded for past and future medical expenses, past and future lost earning capacity, and future mental anguish caused by physical disability. A jury question is immaterial when it was properly submitted but has been rendered immaterial by other findings, or when its answer cannot alter the effect of the verdict. *In re Wyatt Field Serv. Co.*, 454 S.W.3d 145, 159 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding [mand. dism'd]). In this case, the jury's damages findings were rendered immaterial by its liability findings, which we have found were supported by the evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (West 2015). Accordingly, with regard to the damages awards that the trial

11

court ruled were against the great weight and preponderance of the evidence, the trial court clearly abused its discretion by granting a new trial based on findings rendered immaterial by other findings. *See id.*

## Jury Argument

The trial court ordered a new trial because Oiltanking made what the trial court deemed was an improper and prejudicial jury argument. In closing argument, Oiltanking argued, in part, that the evidence showed Stelly had a deteriorating orthopedic condition before and after the accident. Without objection, Oiltanking argued Stelly's disregard of a doctor's light duty restriction six weeks before the accident was "an accident waiting to happen[,]" that "instead of going on light duty, he fell[,]" and further argued that Stelly "shouldn't have even been out there." In his motion for new trial, Stelly argued the verdict was manifestly unjust because the jury blamed Stelly on a faulty legal principle. In its order granting Stelly's motion for new trial, the trial court ruled that no instruction to disregard could dissuade the jury from improperly blaming Stelly for his injuries after they were told Stelly would never have been hurt if he had simply followed the order to be on light duty.

Generally, a complaint about an improper jury argument must be preserved by making an objection at the time the argument occurs, obtaining a ruling on the objection, and requesting an instruction that the jury disregard the improper remark.

*Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). However, a complaint of incurable jury argument may be asserted and preserved in a motion for new trial. Tex. R. Civ. P. 324(b)(5). Because an instruction to disregard will typically cure any probable harm arising from an improper jury argument, to be incurable the argument must be so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Goforth v. Alvey*, 271 S.W.2d 404, 450-51 (Tex. 1954).

"[I]ncurable argument is that which strikes at the very core of the judicial process." *Phillips*, 288 S.W.3d at 883. When appropriate, a new trial may be ordered because "arguments that strike at the courts' impartiality, equality, and fairness inflict damage beyond the parties and the individual case under consideration . . . [and] damage the judicial system itself by impairing the confidence which our citizens have in the system[.]" *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 681 (Tex. 2008). Examples of incurable arguments include appeals to racial prejudice, extreme unsupported personal attacks on parties or witnesses, and unfounded accusations of manipulating a witness. *Id.*

Oiltanking's argument that Stelly was at fault for violating his doctor's medical restrictions on the date of the accident neither appealed to racial or ethnic bias, nor perpetrated an extreme personal attack on Stelly or an unsupported

inflammatory allegation of illegal or immoral conduct by Stelly or his counsel. Because the argument was not incurable, the trial court clearly abused its discretion by granting a new trial.

## Conclusion

Because the underlying record does not support the trial court's articulated reasons for granting the motion for new trial, we conditionally grant the petition for mandamus relief. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d at 758. A writ will issue only in the event the trial court fails to vacate its January 10, 2018 order granting a new trial and reinstate the judgment on the jury's verdict.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on March 27, 2018
Opinion Delivered May 17, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.