# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00285-CV

**Barbara Thompson, Appellant**

**v.**

**Noah Davis, Appellee**

### FROM THE 423RD DISTRICT COURT OF BASTROP COUNTY
### NO. 423-4882, THE HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the judgment of the district court of Bastrop County rendered after a jury trial in a personal-injury suit. Appellant is Barbara Thompson and appellee is Noah Davis.

The lawsuit arose from a November 2015 rear-end collision on Chestnut Street in Bastrop. The jury found that Davis's negligence caused the collision and awarded Thompson $5000 in past medical expenses and zero in future medical expenses, in past and future physical pain and mental anguish, and in past and future physical impairment. The district court rendered judgment for Thompson for $16,901.49, which included the jury's award of past medical expenses, prejudgment interest, and costs. We will affirm the judgment.

Thompson advances three arguments for reversal of the judgment: (1) and (2) the jury's award of zero for past physical pain and mental anguish, and its award of $5,000 for past

medical expenses are so contrary to the great weight and preponderance of the evidence as to be manifestly unjust; and (3) incurable jury argument by Davis's counsel.

When a party attacks the factual sufficiency of an adverse finding on an issue in which she had the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). The court of appeals must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* The jury generally has great discretion in considering evidence on the issue of damages. *McGalliard v. Kulhmann*, 722 S.W.2d 694, 697 (Tex. 1986). When parties introduce conflicting testimony in a jury trial, it is the duty of the jury to determine which witness is more credible. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex. 1982). The jury is the sole judge of the credibility of witnesses and the weight to be given to the testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

Davis testified that, immediately before the collision, he was driving with the "flow of traffic" at perhaps forty-five miles per hour. When his attention was diverted from the traffic ahead, his car struck the rear of Thompson's vehicle with considerable force, causing enough damage that it had to be towed away.

Thompson's proof of injury was that when she got home after the collision her whole body hurt. She testified that she could not sleep that night and that the pain, mainly in her lower back and leg, kept her from sleeping through the night for some time. She had headaches constantly at first. She could not sit in one position for long and would have to shift positions. Because of the pain, performance of everyday tasks around the house became difficult. She

2

could no longer play with the grandchildren like she could before the collision. The pain also affected her relationship with her husband. She became anxious about driving cars, particularly small cars, and she constantly checked the rear-view mirror when driving.

Brittany Bearden, Thompson's adopted niece, testified that Thompson could not do anything like she used to do before the collision. She asserted that Thompson tried to hide the fact that she was experiencing pain.

Larry, Thompson's husband, testified that when he arrived at the collision scene, Thompson was "scared," and that she told him that her body was sore. Two or three days later, she was "really hurting." He could see in her face that she was in pain although she tried to make out that she was all right. He testified that Thompson no longer felt able to go to country-music concerts as she once did. She is no longer able to accompany him in his truck on his work rounds.

The proof from the defense presents a different picture. The evidence was that after the wreck, Thompson got out of her car and walked around. She seemed flustered but not injured. She walked to the back of her car looking for her glasses or checking the groceries. Thompson said that she knew that she was "okay." She telephoned her son in Florida to tell him that she was all right. She refused to be checked by the paramedics when the ambulance arrived. She then went to the tow yard to fetch some personal items from her car.

That evening, Thompson drove herself to Seton Smithville Regional Hospital. She testified that "everything" was hurting, but the hospital records showed that she complained of pain in her back, neck, right calf, and *left* shoulder. The physical examination and x-rays revealed no injury. Finding nothing wrong, except bruising and a possible cervical sprain, the hospital provided her with prescriptions for a muscle relaxer and pain-killer and discharged her.

The hospital physicians advised Thompson to follow up with her primary care physician. She neither had the prescriptions filled nor consulted with her primary care doctor.

A few days later, Thompson went to the Travis Chiropractic Center in Bastrop. On the "application to become a patient" form, Thompson indicated that her neck, *left* shoulder, and lower back were hurting, along with bruising on her right and left hips. She had chiropractic treatments from November 2015 to February 2016 when she was discharged after she informed the chiropractor that she was getting better.

In March 2016, Thompson visited her primary care physician, Dr. Dougherty, about a medical matter unrelated to the collision. During the visit, she mentioned having minimal pain in her *left* shoulder and the right side of her lumbar spine, with pain increasing during physical activity. The doctor ordered an MRI that showed only normal wear and tear for a person of her age. She had no continuing treatments with Dr. Dougherty about the *left* shoulder or any other condition to do with the collision.

Thompson employed an attorney sometime in mid-2016 who referred her to a pain-management doctor, Dr. Frederick, at Texas Pain Center and two orthopedic specialists in Austin, Dr. Josey and Dr. Seade. She received an epidural injection to her spine in July 2016 but refused any further injections. Thompson received physical therapy from late August 2016 to early October 2016.

Although Thompson's complaints shortly after the collision centered on her *left* shoulder, she complained to her new doctors about pain in her *right* shoulder. She saw Dr. Josey and Dr. Seade in the fall of 2016, then stopped seeing them. She never followed up with them again in the year and a half leading up to trial. Although she continued seeing her primary care

4

doctor in 2017 and 2018 about the unrelated medical condition, she never complained to him of any pain related to the collision.

Finally, Thompson's credibility was shaken in several instances. She testified at trial and on deposition that she had never been involved in litigation. But she admitted on cross-examination that this was untrue and that she had been a plaintiff and defendant in litigation, including a previous personal-injury suit.

Although Thompson testified at length that the pain limited her everyday activities, she admitted that she still took vacations abroad in Mexico and Jamaica, and that she drove to Florida every six or eight weeks to visit her son. Thompson claimed at trial that the pain and discomfort resulting from the collision impacted her marriage. But she had previously testified on deposition that her marriage had not been affected by the collision.

The jury's award of zero damages for past physical pain and mental anguish is not against the great weight and preponderance of the evidence. Thompson attempts to invoke the principle that a jury award of the damages for physical pain and mental anguish must be set aside when there is objective, undisputed evidence of a significant injury. *See Golden Eagle Archery*, 116 S.W.2d at 775. She contends that there is undisputed evidence of such injury here: the medical records of Smithville Regional Hospital. Those records show that she complained of pain in her back, neck, right calf, and *left* shoulder, but her physical examination and x-rays revealed no injuries. Finding nothing wrong with her, except bruising and a possible sprain, the hospital discharged her. The MRI ordered by Thompson's primary care physician a few months later showed only normal wear and tear for a person of her age. Given these facts, the jury could have concluded that Thompson incurred only minor, not significant, injuries in the collision, not rising to the level of compensable pain.

As the evidence was conflicting about the severity of the injuries, the jury had discretion to resolve the conflicts, determine which version of the evidence to accept, and refuse to award damages. *See Byrd v. Westerhof*, No. 03-00-00180-CV, 2001 WL 101517, at *3 (Tex. App.—Austin Feb. 8, 2001, no pet.). And the jury was also free to disregard Thompson's subjective complaints of pain as not credible, particularly as there was evidence casting doubt on her veracity.

Thompson next asserts that the jury's award of $5,000 for past medical expenses is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Thompson introduced evidence that she paid or incurred $23,461.15 in past medical expenses. Thompson argues that the jury had no discretion to award an amount less than $5,105.53 in past medical expenses because in closing argument Davis's counsel "conceded" that sum. In closing argument, Davis's counsel pointed out to the jury that only the medical bills amounting to $5,105.53 were those not having anything to do with attorney referrals. He then suggested that such number was one that they might consider. Thompson maintains that this was "undisputed evidence" of at least $5,105.53 in past medical expenses.[1]

Thompson's claim is not meritorious. First, counsel's argument was not a "concession," and second, of course, it was not evidence, let alone conclusive evidence requiring the jury to award at least that amount.

---

[1] Thompson relies on *Villarreal v. Timms*, No. 04-18-00444-CV, 2019 WL 2014517 (Tex. App.—San Antonio May 8, 2019, no pet.), as authority for reversal of the judgment. In *Villarreal*, a divided court concluded that a certain sum was the "basement" of what the jury could award because the defendant's own expert witness conceded that the medical treatments helped the plaintiff's injured condition and that the amounts charged for the medical services were reasonable.

A jury's damage award will not be disregarded merely because the jury's reasoning in reaching its figure is unclear. *See Ochoa-Cronfel v. Murray*, No. 03-15-00242-CV, 2016 WL 3521885 at *5 (Tex. App.—Austin June 22, 2016, no pet.) (mem. op.) (upholding jury's award of $9,345 for past medical expenses rather than $11,956.59 as shown on plaintiff's medical billing records). Here, the evidence was conflicting concerning the severity of Thompson's injuries and the resulting need for medical care. The jury could have reasonably concluded that her injuries resulting from the collision were relatively minor and only awarded damages for medical care at or near the time of the collision.

Thompson claims finally that defense counsel made improper closing argument by mentioning that Thompson's attorneys referred her to several medical providers who in turn recommended expensive treatments and that such argument created incurable harm. The complained of argument is as follows:

> So with that, and considering these references to the lawyers, I would suggest to you as I went, if you go through the billing records, and in that binder you will find that these particular providers do not reference Daniel Stark Law Firm. Smithville Regional Hospital, that's the emergency room. Emergency Physicians of Central Texas that's the emergency room doctors. The Travis Chiropractic Center and the Austin Radiology Association, those are the initial x-rays and the MRI that Dr. Dougherty sent her for. And that totals up to $5,105.53. Those are the only providers that you will find in those records that do not refer to the Daniel Stark Law Firm.

Even if such argument were improper and harmful, which we do not determine, Thompson did not preserve error in that she neither objected nor sought a curative instruction. *See Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008) (per curiam).

Regardless of whether counsel's statements were proper, they did not create incurable harm. Incurable argument is rare. *Id.* at 681. But argument that strikes at the

7

appearance of and the actual impartiality, equality, and fairness of justice rendered by courts is incurably harmful not only because of its harm to the litigants involved, but also because of its capacity to damage the judicial system. *Id.*

In *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979), the Supreme Court concluded that defense counsel's argument claiming a conspiracy between a worker's compensation plaintiff's doctor and his attorney to inflate his medical bills was, at most, curable error. Defense counsel argued the following:

> But that won't make this claim valuable enough. So we have to run in Dr. Buning. Enter Dr. Buning, April 8, 1975, approximately three and a half weeks after this incident. Dr. Buning is Spring Branch, Mr. Reese, Astrodome. He drove by a thousand doctors between the Astrodome and Spring Branch. Aren't you curious as to why he went to Dr. Buning? Aren't you curious as to why Mr. Mafrige sent him to Dr. Buning? Does not a sham or a plot evolve out of all of this? What does Buning do then? Let's send him over to old Mort, give him the old 1-6-8-9-11-15 treatment. That's good. That looks good on paper. We can pump on him for about six or eight weeks, build those medical bills up real high. The higher the medical bills, obviously he has got to be hurt if he has got all of those medical bills. It will look good in front of a jury. Does that not make itself abundantly clear to you? Does that not eat away at the credibility of this entire situation?

*Id.* at 836.

The language used in defense counsel's closing argument here pales in comparison to that used by counsel in *Standard Fire*. Following *Standard Fire*, we overrule Thompson's third issue.

The judgment is affirmed.

_____

Bob E. Shannon, Justice

Before Justices Baker, Kelly, and Shannon*

Affirmed

Filed:   January 22, 2020

*  Before Bob E. Shannon, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).