**Affirmed and Opinion Filed July 17, 2017.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-16-00346-CV**

## ABDUL KHAN, Appellant

## V.

## THE CHAI ROAD, INC., D/B/A WATERJET WORKS, Appellee

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-07892

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Stoddart

Abdul Khan appeals an adverse judgment for damages for breach of contract following a jury trial. In three issues, he argues the trial court erred by not granting a mistrial when a witness referred to Khan's religion, the jury charge included an incorrect measure of damages, and there is no evidence appellee tendered performance under the contract. We affirm.

### BACKGROUND

Khan contacted WaterJet about a design for a stone medallion in the foyer of his new home. WaterJet was to design the medallion and cut the stones for the design to be installed by Khan's builder. WaterJet's owner, Philip Einsohn, showed Khan a large design he produced for

another customer, which Khan liked very much. That design was too large for Khan's home, however, so Einsohn proposed adapting the design to fit the space. The proposed price was approximately $50,000 plus the cost of materials, a price that exceeded Khan's budget.

After some negotiation, they reached an agreement for WaterJet to adapt the design and cut the stone for $25,000, plus materials at WaterJet's cost plus twenty percent. Khan paid $25,000 to WaterJet in advance. WaterJet sent a written acknowledgement dated May 1, 2014 of the payment, which included specific terms for the project. Khan testified the May 1, 2014 acknowledgment was their contract. One of the terms of the acknowledgement required payment of the balance before delivery of the foyer medallion. Khan also told Einsohn he planned to finish the floor by the end of June, but the acknowledgement did not include a deadline for delivery.

WaterJet prepared an initial design in early May. Khan was disappointed with the design and requested a larger one. Einsohn explained that Khan's budget of $25,000 would not allow for a larger design. After further negotiation, WaterJet offered to modify the design for an additional $6,000. Khan agreed to pay the additional amount if he liked the new design.

WaterJet presented a new design and the Khans approved it around the middle of June. A few days later, Khan suggested adding some circles to the design. Einsohn agreed. On June 23, 2014, Einsohn met with the Khans and showed them refined drawings. Pursuant to an e-mail sent by Einsohn after the meeting, they agreed WaterJet would order material, bill Khan as soon as the order was acknowledged, and Khan would pay the invoice on receipt of the acknowledgement. WaterJet agreed to notify Khan when the materials arrived and would begin cutting the stone for the main design.

On June 27, 2014, WaterJet billed Khan $11,891.57 for the materials. The invoice stated it was due on receipt and that payment was required before shipping. WaterJet received the

materials and paid its supplier a few days later. Khan, however, did not pay the invoice. After communicating with Khan, WaterJet began cutting the stone for the medallion. On June 30, 2014, Khan met with Einsohn. Afterward, Einsohn sent an e-mail stating he would continue cutting the material and asked Khan to pay the invoice at their July 2 meeting to review the drawings with the circles added. On July 1, 2014, Einsohn notified Khan the drawings were finished and again asked Khan to bring a check for the materials to the meeting. Khan initially confirmed the meeting, but that morning requested Einsohn e-mail the design to them for review because Khan's wife was out of town. Einsohn suggested Khan come to the office to see the drawings and bring a check for the materials. Khan did not meet with Einsohn or deliver a check. On July 3, 2014, Khan complained that Einsohn did not send the design as requested and his wife refused to make any payment until she saw the design. Einsohn responded that the drawings were available at his office once Khan met his commitment to pay for the materials.

Khan sued WaterJet for breach of contract and other claims on July 23, 2014. He sought a refund of the $25,000 he paid. WaterJet filed a counterclaim for breach of contract, seeking payment of the $6,000 additional design fee and $11,891.57 for the materials. The jury found the parties entered into a contract, Khan breached the contract, WaterJet did not breach the contract, and that WaterJet's damages were $17,891.57. The trial court rendered judgment on the jury verdict in favor of WaterJet. Khan's motions for judgment notwithstanding the verdict and for new trial were overruled.

DISCUSSION

### 1. Incurable harm

In his first issue, Khan contends the trial court erred by denying his motion for mistrial, which asserted he suffered incurable harm from Einsohn's reference to Khan's religion at trial.

We review the trial court's denial of a motion for mistrial under an abuse of discretion

–3–

standard. *Deese v. Combined Specialty Ins. Co.*, 352 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet.). We review whether an improper statement by a witness constitutes incurable harm under the same standards that are applicable to incurable jury argument. *Nguyen v. Myers*, 442 S.W.3d 434, 441 (Tex. App.—Dallas 2013, no pet.). Incurable harm from argument is rare. Such an argument "strikes at the very core of the judicial process," *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009), and "by its nature, degree, and extent constitute[s] such error that an instruction from the court or retraction of the argument could not remove its effects." *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680–81 (Tex. 2008) (per curiam). Examples of incurable arguments are appeals to racial prejudice, extreme unsupported personal attacks on parties or witnesses, and unfounded accusations of manipulating a witness. *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681; *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied).

To prevail on his claim of incurable harm, Khan must show that based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips*, 288 S.W.3d at 883 (quoting *Goforth v. Alvey*, 271 S.W.2d 404, 404 (Tex. 1954)). Typically, retraction of the argument or an instruction from the trial court will cure any probable harm from improper argument. *Phillips*, 288 S.W.3d at 883; *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680. A finding of incurable harm from improper argument must be based on the entire record and should consider the length of the argument, whether it was repeated or abandoned, and its probable effect on a material finding. *See Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex. 1979)).

The complained-of statement occurred during Einsohn's testimony on the second day of trial. In the course of describing their initial discussions about a design, Einsohn testified that the

Khans showed him pictures of what they were interested in for the design. At that point, the following occurred:

> Q. [WaterJet's Counsel] Okay. And did you have a conversation with them about whether or not you could duplicate one of those medallions?
>
> A. Yes, and I repeated that — They — They repeated to me that this was only a design that they were interested in because they did not want cherubims [sic] and angels because — what I surmised by that was for religious reasons and —
>
> [Khan's counsel] Objection; relevance.
>
> THE COURT: Sustained.

After this exchange, the questioning moved to other matters. At the next break, Khan's attorney moved for a mistrial asserting Einsohn mentioned Khan's religion in an effort to "tar" him. He argued that Khan is from Pakistan and the reference to not wanting angels or cherubim informed the jury that he is a Muslim. Khan's attorney asserted that Muslims are under particular scrutiny at this time and referencing his religion caused incurable harm. The trial court responded that Khan's religion was never identified by name and denied the motion for mistrial.

We agree that the comment here was improper. Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility. TEX. R. EVID. 610. Nor was the comment relevant to a material issue in the case. Thus, the trial court correctly sustained the objection to the comment. However, the issue in this appeal is not whether the comment was improper, but whether it resulted in incurable harm requiring a mistrial. That determination can only be made after examining the entire record. *See Reese*, 584 S.W.2d at 840.

In opening statement, Khan's counsel described him as "a classic American success story, an immigrant who came from Pakistan who got his U.S. citizenship about 16 years ago,"

and who built a successful business energy drink business after starting from a single small business. However, neither attorney alluded to religion in their opening statements. During the presentation of evidence, the only mention of Khan's religion was the statement quoted above. After Khan's objection was sustained, counsel moved to other topics and the reference to religion was never repeated. Religion was never referenced in closing argument.

Courts in this state have long recognized that a person's religious beliefs have no place in determining the merits of a dispute. *See Moss v. Sanger*, 12 S.W. 619, 620 (Tex. 1889) ("Cases ought to be tried in a court of justice upon the facts proved; and whether a party be Jew or gentile, white or black, is a matter of indifference."). Similarly, appeals to racial prejudice "adversely affect the fairness and equality of justice rendered by courts because they improperly induce consideration of a party's race to be used as a factor in the jury's decision." *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681. Unsupported, extreme, and personal attacks on opposing parties and witnesses can also compromise "the basic premise that a trial provides impartial, equal justice." *Id.*

Considered in its context, the comment about religion in this case does not rise to the level of arguments that have been held to cause incurable harm. *See Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681 (comparing opposing counsel to perpetrators of World War II German program of medical experimentation on elderly and infirm); *Tex. Emp'rs' Ins. Ass'n v. Haywood*, 266 S.W.2d 856, 858 (Tex. 1954) (argument questioning why opponent did not "bring some white fellow that you could see and know was telling the truth?" rather than "a couple of those yellow nigs"); *Moss*, 12 S.W. at 620 (argument that lawsuit was scheme to swindle and defraud concocted by a Jew, a Dutchman, and a lawyer, describing witness as "the old he-Jew of all, who no doubt planned the whole thing. All Jews, or Dutch Jews, and that is worse"); *Tex. Emp'rs' Ins. Ass'n v. Jones*, 361 S.W.2d 725 (Tex. Civ. App.—Waco 1962, writ ref'd n.r.e.) (derogatory

reference to witness as "that Jew" and implication witness would falsify his testimony for money). The comment here was brief and isolated. It was not repeated and the trial court promptly sustained the objection to its relevance. The comment did not suggest Khan should not be believed or was not trustworthy because of his religion. Nor is that suggestion made anywhere in the record.

Nevertheless, Khan suggests there was a "harmful injection of Mr. Khan's religious beliefs into a trial that had nothing to do with them." He asserts the comment implied he was not a Christian by stating he did not want cherubs or angels in the design because of his religion. We agree that Khan's religion had nothing to do with the trial, as did the trial court. The trial court sustained the relevancy objection, informing the jury the comment was irrelevant, and nothing in the record shows the jury failed to follow that ruling. This single reference to Khan's religion was not so extreme that any harm could not be cured by an instruction to disregard even if Khan had requested one.

Khan contends that "subtle appeals to prejudice" are as hurtful as overt ones, citing *Texas Employers' Insurance Association v. Guerrero*, 800 S.W.2d 859, 864–65 (Tex. App.—San Antonio 1990, writ denied) (argument to predominantly Hispanic jury "to stick together as a community" with Hispanic plaintiff was appeal to ethnic unity constituting incurable reversible error). The court of appeals in *Guerrero* stated, "The law should not stoop to evaluating subtle distinctions such as whether an argument was too crude and revolting, or on the other hand sufficiently slick and artful to pass muster." 800 S.W.2d at 865. However, the supreme court clearly recognizes it is the duty of appellate courts to "judge by the degree of the vice, not merely the subject matter of the argument." *Wade v. Tex. Emp'rs' Ins. Ass'n*, 244 S.W.2d 197, 201 (Tex. 1951). Even the court in *Guerrero* excluded incidental references to race from its holding. *See Guerrero*, 800 S.W.2d at 863, 867 ("an appeal to racial prejudice—as opposed to the mere

–7–

incidental mention of race—constitutes reversible error even if no objection was made", "[w]e stress that our holding does not encompass incidental references to the race of parties and witnesses . . .."). Contrary to Khan's reading of *Guerrero*, we must consider the "nature, degree, and extent" of the comment to determine whether it was so prejudicial that an instruction from the court or retraction of the statement could not remove its harmful effects. *See Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681.

While even subtle appeals to prejudice are prohibited, the mere mention of religion in this case was not an appeal to prejudice in any form, subtle or otherwise. The statement did not imply that Khan could not be believed because of his religion. Moreover, the record does not show that the harm, if any, from the mention of religion was incurable. *See Reese*, 584 S.W.2d at 840 (noting that "even strong appeals to prejudice become harmless when a jury is instructed to disregard them"); *Haywood*, 266 S.W.2d at 858 ("argument which is improper only because its nature is calculated to inflame the minds and arouse the passion of prejudice of jurors is usually regarded as being of the 'curable' type") (citing *Wade*, 244 S.W.2d at 200–01).

Finally, arguing that the fairness of his trial cannot be guaranteed, Khan encourages us to adopt a rule requiring an automatic mistrial upon request if a party voluntarily interjects "the Muslim religious preference of the opposing party" into the trial. He cites no authority for such a per se rule and it would run against the exacting analysis of the entire record required by the standards established by the supreme court. *See Phillips*, 288 S.W.3d at 883 (considering record as a whole, plea to send a message to doctors was "not so extreme as to be incapable of cure"); *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681 (the "test is the amount of harm from the argument"); *Reese*, 584 S.W.2d at 840 (listing factors such as length of the argument, whether it was repeated or abandoned, its probable effect on a material finding after a close examination of all the evidence, and an evaluation of the whole case, "which begins with the voir dire and ends

–8–

with the closing argument"). The true test for whether improper argument is incurable "is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." *Haywood*, 266 S.W.2d at 858. We decline the invitation to depart from the established standards for determining whether harm from an improper argument or statement is incurable.

We conclude the single isolated comment in the context of the entire trial did not strike at the court's impartiality, equality, and fairness. Based on the record as a whole, a juror of ordinary intelligence could not have been persuaded by the comment to agree to a verdict contrary to that to which he would have agreed but for the comment. *Phillips*, 288 S.W.3d at 883. Accordingly, the trial court did not abuse its discretion by denying Khan's motion for mistrial. We overrule Khan's first issue.

### 2.     Measure of damages

In his second issue, Khan argues the trial court failed to instruct the jury on the correct measure of damages and no evidence supports the correct measure. He contends the jury should have been instructed to exclude the costs WaterJet saved by not completely performing the contract and WaterJet offered no evidence of the amount saved.

When reviewing the legal sufficiency of the evidence, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* A challenge to the legal sufficiency of the evidence will be sustained when, among other things, the evidence

–9–

offered to establish a vital fact does not exceed a scintilla. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). We review the sufficiency of the evidence in light of the jury charge as given unless charge error was preserved in the trial court. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge").

The normal measure of damages for breach of contract is the benefit-of-the-bargain measure. *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888–89 (Tex. App.—Dallas 2004, pet. denied). This measure seeks to restore the injured party to the economic position it would have been in had the contract been performed. *Id.* The benefit of the bargain is measured by the prevailing party's anticipated receipts and losses caused by the breach less any cost or other loss he avoided by not having to perform. *Id.*; RESTATEMENT (SECOND) OF CONTRACTS § 347.

The jury was instructed to consider two factors in awarding damages: (1) actual damages defined as the difference between the amount Khan agreed to pay WaterJet and the amount actually paid; and (2) incidental damages defined as reasonable and necessary costs to keep the stones Khan ordered in storage and the reasonable and necessary costs of cutting the stones. The jury awarded a total of $17,891.57 as damages.

WaterJet argues that Khan did not preserve error because he did not object to the charge or request an instruction on costs saved by WaterJet. We agree. Khan's proposed jury charge

did not request an instruction regarding costs saved by WaterJet. At the charge conference, the trial court overruled all pretrial requests for instructions that were not included in the charge. Khan's attorney then stated he did not have any other objections to the charge.

On appeal, Khan contends he preserved error regarding the jury charge in his motion for directed verdict. We disagree. We rejected the same argument in *Dallas Central Appraisal District v. Friends of the Military*, 204 S.W.3d 556, 562 (Tex. App.—Dallas 2009, pet. denied). The appraisal district argued it was not required to request an instruction or object to its absence because the district filed a motion for directed verdict and a motion for judgment notwithstanding the verdict. *Id.* We stated:

> Although we agree that motions for directed verdict and judgment notwithstanding the verdict preserve a no-evidence review, we disagree that those motions require us to review the sufficiency of the evidence based on a definition that was not provided to the jury.

*Id.*

Even though Khan argued in the motion for directed verdict that there was no evidence of the costs saved by WaterJet, he did not request a substantially correct instruction on the issue or object to the omission of such an instruction from the charge. *See id.* If Khan "believed that the jury charge presented an improper measure of damages . . ., [he] was required to timely object and make the trial court aware of [his] complaint in order to preserve error for appeal." *Equistar Chemicals, L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007); *see* TEX. R. CIV. P. 272; TEX. R. CIV. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."). To the extent the second issue raises an error in the jury charge, the error is not preserved for appeal. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 278.

Because Khan failed to preserve error regarding the measure of damages the jury was instructed to use, damages are measured by the question and instruction given. *Equistar*, 240 S.W.3d at 868; *Dallas Cent. Appraisal Dist.*, 204 S.W.3d at 562. The jury was instructed to determine actual damages as the difference between the amount Khan agreed to pay and the amount he actually paid. There is evidence that, in addition to the $25,000 he paid, Khan agreed to pay $6,000 for additional design work and the cost of materials, which was $11,891.57 as shown on the invoice WaterJet sent to Khan. It is undisputed that Khan never paid these amounts, which total $17,891.57, the amount found by the jury. To the extent the issue challenges the legal sufficiency of the evidence, we conclude based on the charge as given that the evidence is sufficient to support the jury's finding. We overrule Khan's second issue.

### 3. Tender of performance

In his third issue, Khan challenges the legal sufficiency of the evidence to show WaterJet performed or tendered performance of the contract.

One of the elements of a breach of contract claim is the claimant's performance or tender of performance under the contract. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.). Generally, tender means an offer of performance under the contract such that the other party will be in default if he fails to proceed in some manner. *See Valero Mktg. & Supply Co. v. Kalama Intern.*, 51 S.W.3d 345, 352 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting TEX. BUS. & COM. CODE ANN. § 2.503(a) cmt. 1). The offer of performance must be accompanied by a manifested present ability to make it good, "but the offeror need not go so far as actually to hold out that which he is to deliver." RESTATEMENT (SECOND) OF CONTRACTS § 238 cmt. b.

The jury found that Khan failed to comply with the contract. It was instructed that a "failure to comply" must be material. Thus, the finding that Khan "failed to comply" with the

contract was a finding of material breach. When one party to a contract commits a material breach, the other party is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam).

Khan suggests, however, that WaterJet was required to deliver the final plans and materials before he was required to pay, but there is no evidence of an agreement to that effect. The terms of the May 1, 2014 acknowledgement, the June 23, 2014 e-mail Khan agreed to, and the June 27, 2014 invoice provide that Khan would pay for the materials on receipt of an invoice and before shipment. Khan admitted he agreed to pay the invoice on receipt and that he refused to pay the invoice once he received it. Further, there is evidence WaterJet prepared the design drawings and Khan approved the design. WaterJet informed Khan the final drawings were available as soon as Khan paid the invoice. Thus, WaterJet's tender of the design and invoice for the materials was such that Khan was in default when he refused to pay the invoice as agreed. We conclude there is some evidence that WaterJet tendered performance and that the evidence is sufficient to support the jury's finding that Khan breached the contract. We overrule Khan's third issue.

## CONCLUSION

Having overruled all of Khan's issues, we affirm the trial court's judgment.


160346F.P05


        /Craig Stoddart/
        CRAIG STODDART
        JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ABDUL KHAN, Appellant

No. 05-16-00346-CV      V.

THE CHAI ROAD, INC., D/B/A
WATERJET WORKS, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-07892.
Opinion delivered by Justice Stoddart.
Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee THE CHAI ROAD, INC., D/B/A WATERJET WORKS recover its costs of this appeal and the full amount of the trial court's judgment from appellant ABDUL KHAN and from any supersedeas bond or cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, we direct the clerk of the trial court to release the balance, if any, of any cash deposit in lieu of supersedeas bond to the person who made the deposit.

Judgment entered this 17th day of July, 2017.