**Opinion filed September 25, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00061-CV

_____

## IN THE INTEREST OF J.M.H., A CHILD

**On Appeal from the 106th District Court**
**Dawson County, Texas**
**Trial Court Cause No. 17-07-20045**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order granting a petition to modify the parent–child relationship between J.M.H. and her parents. The trial court entered the order after a week-long jury trial in which the jury determined that the father, W.L.S., should be the parent with the exclusive right to designate the child's primary residence. The mother, L.B.H., appeals and presents two issues for our review with respect to the jury's determination. Father has filed a cross-appeal wherein he presents two issues challenging the trial court's order entered after the jury verdict. We affirm.

*Background Facts*

Father filed a petition seeking to modify an Order in Suit Affecting the Parent–Child Relationship rendered on February 17, 2015. In the petition, Father sought to be named as the parent with the exclusive right to designate the child's primary residence.

The trial court entered the prior order at a time when the child was two years old. The prior order designated Mother as the parent with the exclusive right to designate the primary residence of the child. Because of the child's young age, the prior order also contained a modified standard possession order until the child became five years old. After the child turned five, the prior order provided for a standard possession order with respect to Father's possession of the child.

The evidence presented to the jury during the five-day trial detailed the acrimonious nature of the relationship between Father and Mother as it pertained to Father's possession of the child. The child's participation in stock shows with Father was a source of friction because several stock shows fell on Mother's weekends for possession. In this regard, Father filed a motion seeking a court order for the child to participate in stock shows. This motion was resolved by a Rule 11 Agreement.

A major source of conflict involved Mother's concern that the child may have been sexually abused during a period of Father's extended summer visitation. This was the first period of extended summer visitation under the standard possession order because the child had just turned five. The child had become homesick for Mother's home during this period, and as a result, Father permitted the child to return to Mother's home for a weekend.

Mother observed bruises on the inner thigh and pubic bone of the child. The child also had suffered burning during urination that was determined to be caused by a urinary tract infection. Mother took the child to a local clinic for an examination. The physician's assistant that examined the child made the following

assessment: "Due to the mother['s] concern that the child may have been touched inappropriately advised her to proceed to UMC/ER for vaginal kit screening for DNA specimen for possible sexual abuse for pediatrics." Mother transported the child to University Medical Center in Lubbock for an examination by a sexual assault nurse examiner (SANE). Mother did not observe the SANE examination performed on the child. Mother testified that she did not know what the examination consisted of but that it was "a terrible thing" for the child to be subjected to.

A few days later, Mother took the child for a forensic interview at the Child Advocacy Center in Midland. Child Protective Services conducted an investigation of Father and the child's older half-brother. CPS ruled out all allegations of improper conduct on the part of Father and the half-brother. Additionally, Father and the half-brother were criminally investigated by the Lubbock County Sheriff's Department. Father did not get to have visitation with the child for several weeks after the allegation.

On direct examination, Mother testified that the SANE examination lasted at least an hour. Mother testified that the child was not upset afterwards and that "[s]he had a smile from ear to ear. She was happy and she was excited to see us." Mother testified that she "never accused" Father or the child's half-brother of abusing the child. However, she also acknowledged that the child had not accused them either.

Father testified that the false sexual assault allegation was the reason why he sought to obtain custody of the child. He considered the false allegation to be the changed circumstance that justified his requested modification. Father testified that, in visiting with the child about the SANE, she indicated that "[i]t was not a very pleasant experience." Father also testified that Mother's frequent change of residences and her act of permitting a boyfriend to sleep over while the child was present were other changes permitting a modification. In that regard, evidence was

offered showing that the police had been called to Mother's residence on multiple occasions for disputes between her and her boyfriend.

*Analysis – Mother's Appeal*

In her first issue, Mother challenges the sufficiency of the evidence to support the jury's implicit determination that Father established a material and substantial change of circumstances to justify the modification. We note at the outset that Mother also alleges in her first issue that Father's trial counsel made an improper jury argument concerning the SANE examination. We will address all of Mother's contentions concerning improper jury arguments in our consideration of her second issue.

Under Section 156.101 of the Texas Family Code, a trial court may modify conservatorship of a child if (1) the modification is in the child's best interest and (2) the circumstances of the child, a conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West 2014); *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.). Mother only challenges the element concerning a material and substantial change of circumstances.

Section 105.002 of the Texas Family Code provides that a party may demand a jury trial in a suit affecting the parent–child relationship. FAM. § 105.002(a)–(b) (West Supp. 2019). Section 105.002 further provides that a party is "entitled to a verdict by the jury and the court may not contravene a jury verdict" on the issues of conservatorship, the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child, and any geographic restrictions. *Id.* § 105.002(c)(1); *see also Lenz v. Lenz*, 79 S.W.3d 10, 20 (Tex. 2002) ("[T]he Legislature specifically included primary residence on the list of issues for which a jury's verdict is binding."). Because a trial court is not permitted to

contravene a jury verdict on the issue of determination of residence, the jury's verdict is reviewed for legal and factual sufficiency. *Epps v. Deboise*, 537 S.W.3d 238, 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see Lenz*, 79 S.W.3d at 17) (applying legal sufficiency standard to review of jury verdict); *Alexander v. Rogers*, 247 S.W.3d 757, 761 (Tex. App.—Dallas 2008, no pet.) (holding legal and factual sufficiency review applies to jury verdict).

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We credit favorable evidence if a reasonable juror could and disregard contrary evidence if a reasonable juror could not. *Id.* at 827. Because jurors are the sole judges of the credibility of witnesses and may choose to believe one witness and disbelieve another, we must not substitute our opinion for that of the jury. *See id.* at 819. It is the role of the jury to resolve conflicts in the evidence; accordingly, we must review the evidence in a light favorable to the verdict and assume that jurors resolved all conflicts in accordance with that verdict. *Id.* at 820. In evaluating a factual sufficiency challenge, we consider and weigh all the evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

In deciding whether a material and substantial change of circumstances has occurred, the factfinder is not confined to rigid or definite guidelines. *Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied). Instead, the determination is fact-specific and must be made according to the circumstances as they arise. *Id.*

> A non-comprehensive list of material changes, as described by other courts, can include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody.

*In re A.L.E.*, 279 S.W.3d 424, 428–29 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ). The law does not prescribe any particular method for a showing of changed circumstances. *In re A.L.E.*, 279 S.W.3d at 429.

Mother challenges the sufficiency of the evidence supporting the change of circumstances asserted by Father on the basis that there was no evidence presented about the technical details of the SANE examination performed on the child. We agree with Mother's contention that there was no evidence about how the examination was performed. However, Father's reliance on the SANE examination to show a changed circumstance did not necessarily depend on how the examination was performed; rather, Father relied on the fact that he and his son were falsely accused of abusing the child and that they were investigated by multiple agencies because of the accusation. Furthermore, the evidence about the effect of the SANE examination on the child was conflicting, and it was the jury's role to resolve that conflict. *See City of Keller*, 168 S.W.3d at 819.

As noted in *Epps*, an attempt to impair or interfere with a child's relationship with the other parent can constitute a substantial and material change justifying a modification of residency. 537 S.W.3d at 243 (citing *Arredondo v. Betancourt*, 383 S.W.3d 730, 734–35 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). Even though Mother denied accusing Father or his son of abusing the child, the note from the physician's assistant stated that she ordered the SANE examination based on Mother's concern that the child may have been touched inappropriately.

Additionally, Father testified that he was informed by law enforcement that Mother had accused him of inappropriate conduct with the child. Mother's basis and motive for making the accusation were matters for the jury to resolve. *See City of Keller*, 168 S.W.3d at 819. We conclude that the evidence was both legally and factually sufficient to establish a material and substantial change of circumstances to justify Father's requested modification based upon the accusation against Father and his son. We overrule Mother's first issue.

In her second issue, Mother asserts that Father's trial counsel made an incurable jury argument when she described the SANE examination in the following manner:

> We have a five-year[-]old child and they've got to look at her vaginal area, not from, oh, let's pe[e]k and see if it's red, let's see if it has been penetrated, let's see if it has been assaulted. Not only the vaginal area, we're going to look at the anal area, as well. You know, we have a five-year[-]old female child stripped naked on a table without any parent present with freezing cold tools being stuck in her, photographs being taken of the most private parts of her body. [Father] didn't do that. [Father] did not do that to that five-year[-]old child. [Mother] did. Regardless of whether y'all want to believe that [Mother] made false allegations against [Father], [Mother] unequivocally, [Mother] without a doubt, drove that child to the emergency room at UMC and she said, here's my kid.[1]

Mother also complains about the following argument: "But, for them to come and stand in front of you and tell you that this child being subjected to a SANE exam is not a material and substantial change for that poor baby is offensive." Mother asserts

---

[1]We note that Father's trial counsel made a very similar assertion during opening statements when she stated:

> We expect that the evidence in this case is going to show you that this five-year[-]old child, at the time, is subjected to a SANE exam; SANE, S-A-N-E, sexual assault nurse exam. I want y'all to think about what a sexual assault nurse exam is for a five-year[-]old child. They're looking at her vaginal area. They're looking at her anal area. They're taking photographs.

Mother did not object to this opening statement, and she does not complain about it on appeal.

on appeal that these arguments were improper because there was no evidence offered concerning the details of the SANE examination. However, Mother did not object to these arguments at trial. She asserts on appeal that these arguments were incurable and constituted a basis for reversal. We disagree.

Error as to improper jury argument must ordinarily be preserved by a timely objection. *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008). "Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured. In such instances the argument is incurable and complaint about the argument may be made even though objection was not timely made." *Id.* To prevail on a claim that improper jury argument was incurable, the complaining party must generally show that the argument by its nature, degree, and extent constituted such error that an instruction from the trial court or a retraction of the argument could not remove its effects. *Id.* at 680–81. Instances of incurable jury argument are rare. *Id.* at 681. Examples include appeals to racial prejudice; unsupported, extreme, personal attacks on opposing counsel and witnesses; and unsupported claims of manipulating a witness. *Id.*

We conclude that the closing arguments that Mother now challenges were not incurable. We first note that the challenged arguments do not fall in the categories of arguments that have been determined to be incurable because they "strike at the courts' impartiality, equality, and fairness." *See id.* Even though there was no evidence about the details of how the SANE examination was performed, counsel is permitted to draw reasonable inferences and deductions from facts and circumstances in evidence. *See Travelers Ins. Co. v. Bohanon*, 381 S.W.2d 929 (Tex. App.—El Paso 1964, no writ). While the description of the SANE examination offered by Father's trial counsel likely exceeded the knowledge possessed by laypersons, it was not so extreme to be outside the realm of what a

8

layperson would infer about how a SANE examination is conducted on a small child.[2] Furthermore, if Mother had timely asserted an objection that the argument was not based on evidence offered at trial, the trial court could have stopped the arguments as soon as they started, thereby limiting any potential harm that they caused. Finally, the arguments were not so inflammatory and prejudicial that a juror of ordinary intelligence would have been persuaded to render a verdict that he or she would not have reached without the argument. *See Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). We overrule Mother's second issue.

*Analysis – Father's Cross-Appeal*

Father also asserts two issues on appeal. Father's issues concern the order entered by the trial court after the jury determined that Father should be the parent with the exclusive right to designate the child's primary residence. In this regard, after the jury decided the issue of the child's residence, it was the trial court's role to then decide the attendant terms and conditions of possession and support. FAM. § 105.002(c)(2); *see In re Webb-Goetz*, No. 01-19-00139-CV, 2019 WL 3293697, at \*2 (Tex. App.—Houston [1st Dist.] July 23, 2019, no pet.) (mem. op.) (citing *In re Reiter*, 404 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding)).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." FAM. § 153.002; *see Lenz*, 79 S.W.3d at 14; *In re Marriage of Harrison*, 557 S.W.3d 99, 120 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). A trial court has broad discretion to decide the best interest of children in matters involving possession and access. *In re Marriage of Harrison*, 557 S.W.3d at 120. Therefore,

---

[2]We note that trial counsel's description of the SANE examination is consistent with the testimony frequently reviewed by this court in criminal cases involving SANE examinations.

we review a trial court's possession order for an abuse of that discretion. *Id.* at 120–21; *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

A trial court abuses its discretion when it acts arbitrarily or unreasonably or when it fails to correctly analyze or apply the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). Under the abuse-of-discretion standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error, but only factors used to assess whether the trial court abused its discretion. *A.J.E.*, 372 S.W.3d at 698. To determine whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire as follows: (1) Did the trial court have sufficient information upon which to exercise its discretion? (2) Did the trial court err in its application of discretion? *Id.* at 698–99.

In his first issue, Father asserts that the trial court violated his due process rights by not allowing him to present additional evidence on nonjury matters. Father's first issue is tied to the manner in which his trial counsel rested and closed at trial. When Father's trial counsel rested his case-in-chief, she made the following statement to the trial court: "Your Honor, there are issues that continue to be relevant to this case, but they are bench issues, not jury issues. With that, we will conditionally rest on jury issues only." When Father's trial counsel later closed, she made the following statement: "Subject to the offer of proof and the bench issues, Your Honor, we'll rest and close."

At the conclusion of an offer of proof and prior to closing arguments, the trial court and the attorneys discussed the court's plan for hearing additional matters. The trial court expressed a desire to receive additional evidence while the jury was deliberating. The trial court also stated that it had an idea of the changes that it would want to make in the possession order, and it established that a consensus existed

10

among the parties that changes needed to be made irrespective of the jury's determination.

The trial court's docket sheet indicates that the jury only deliberated approximately twenty minutes. After the trial court accepted the jury's verdict, it recessed the jury to the jury room and informed the attorneys that it was going to the jury room to thank the jurors for their service. The reporter's record concludes with the trial court's statement, "I'll be back." However, no further evidence was received by the trial court.

Father subsequently filed a motion for an evidentiary hearing on nonjury issues. However, Father did not identify any evidentiary issues that he was precluded from presenting at trial, nor did he complain that the trial court had failed to receive evidence that it previously agreed to hear. Instead, Father alleged as follows in the motion: "Respondent has engaged in behavior since the jury verdict that requires additional evidence to be presented to the Court so the Court may render its ruling on the non-jury issues." A hearing on this motion did not occur. The trial court subsequently entered a "Final Order in Suit to Modify Parent Child Relationship." Father filed a request for findings of fact and conclusions of law, but he did not file a motion for new trial complaining of the trial court's final order.

Father asserts on appeal that the trial court erred by not permitting him to present additional evidence after the jury concluded its deliberations. Father primarily relies on *Producer's Construction Co. v. Muegge* in support of his issue. 669 S.W.2d 717 (Tex. 1984) (per curiam). In *Muegge*, the Texas Supreme Court determined that a trial court violates a party's due process rights if it rules without providing the party an opportunity to present any evidence. *Id*. at 718–19.

We conclude that *Muegge* is inapplicable to this case because Father was not prohibited from presenting *any* evidence. *See Capital Bank v. Commonwealth Land Title Ins. Co.*, 861 S.W.2d 84, 87 (Tex. App.—Houston [1st Dist.] 1993, no writ)

11

(explaining that *Muegge* applies to situations wherein a party is not allowed to present any evidence); *see also In re Ludington*, No. 01-16-00411-CV, 2017 WL 219162, at *5 (Tex. App.—Houston [1st Dist.] Jan. 19, 2017, no pet.) (mem. op.). To the contrary, Father presented a great deal of evidence concerning the nonjury issues during a week-long jury trial that dealt extensively with the parents' possession of and access to the child. There was no doubt a great deal of overlap in the evidence pertaining to the jury's determination of the parent with the exclusive right to designate the child's primary residence and the nonjury issues that the trial court was subsequently required to resolve. In this regard, the trial court commented to the parties prior to submitting the case to the jury that it had "ideas about changes to the Order I'd want to make" based on the evidence that had already been presented to the jury.

Father is essentially asserting that the trial court failed to consider additional evidence. While Father filed a post-verdict motion to present additional evidence, the motion only sought to present evidence of post-verdict conduct on the part of Mother. Father did not point out in the motion that the trial court needed to receive any additional evidence that Father had indicated that he wanted to present when he rested and closed. Afterwards, Father did not file a motion for new trial identifying any additional evidence that he wanted the trial court to consider in rendering its order on possession, access, and support.

Rule 324(b)(1) of the Texas Rules of Civil Procedure requires that certain complaints must be raised in a motion for new trial in order to be preserved for appellate review, including a complaint on which evidence must be heard. TEX. R. CIV. P. 324(b)(1); *see Cook v. Monaghan Med. Corp.*, No. 01-19-00121-CV, 2020 WL 3422291, at *2 (Tex. App.—Houston [1st Dist.] June 23, 2020, no pet.). We conclude that Father did not preserve for appellate review his complaint that the trial court failed to receive additional evidence. *See* TEX. R. APP. P. 33.1(a); *Holden v.*

12

*Holden*, 456 S.W.3d 642, 649 (Tex. App.—Tyler 2015, no pet.) (A motion for new trial is a prerequisite under Rule 324(b)(1) for a complaint that the trial court should have allowed the submission of additional evidence.). Simply put, Father had the opportunity to present the additional evidence that he might have wanted the trial court to consider, but he did not do so. We overrule Father's first issue.

In his second issue, Father alternatively asserts that that the trial court's order was not supported by legally and factually sufficient evidence. He lists eleven matters contained in the trial court's order that he contends were not supported by evidence. The first matter concerns child support; the trial court ordered Mother to pay child support in the amount of $399.99. The second, third, fourth, fifth, and sixth matters are instances wherein the trial court gave Mother the independent right to consent to various aspects of the child's life, including medical care. The seventh, eight, ninth, tenth, and eleventh matters involve alternative times for Mother to exercise possession of the child.

We disagree with Father's contentions that the trial court's orders lacked evidentiary support. The parties presented a great deal of evidence during the week-long trial about how the parties had exercised visitation exchanges and the difficulties they had experienced with visitation in the past. The evidence also detailed the lack of communication between the parents concerning the child's medical care. Additionally, evidence was offered concerning Mother's salary and her financial dependence on her parents. Mother's pay stubs and income tax returns were offered into evidence, and Father's trial counsel referenced Mother's wages during closing argument. We conclude that the trial court did not abuse its discretion in entering its orders because the orders were supported by sufficient evidence. We overrule Father's second issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

September 25, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.